IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-5 T

(Judge Margaret M. Sweeney)

KERR-MCGEE CORPORATION AND SUBSIDIARIES,

Plaintiffs

v.

UNITED STATES,

Defendant

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

COOLEY GODWARD KRONISH LLP

1114 Avenue of the Americas
New York, New York 10036
(212) 479-6000
(212) 479-6275

Attorneys for Plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT ... 1

QUESTION PRESENTED ... 2

STATEMENT OF THE CASE ... 2

ARGUMENT ... 5

A. Introduction ... 5

B. The remediation expenditures at issue in this case would clearly be deductible if Kerr-McGee had owned the Cushing site since before it was contaminated ... 6

C. The fact that the Cushing site was acquired by Kerr-McGee does not change the result... 8

D. The matching concept requires that Kerr-McGee's expenses be deductible ... 12

CONCLUSION ... 12

APPENDIX

The Internal Revenue Code of 1986, as in effect in 1995 and 1996:

Section 162(a) ... 1

Section 263(a) ... 1

The Treasury Regulations, as in effect in 1995 and 1996:

Treas. Reg. § 1.263(a)-1(b) ... 2

## TABLE OF AUTHORITIES

### CASES

*A.E. Staley Manufacturing Company v. Commissioner*, 119 F.3d 482 (7th Cir. 1997) ..................6

*Chicago, Burlington & Quincy R.R. v. United States*, 197 Ct.Cl. 264, 455 F.2d 993 (1972) .........9

*Cinergy Corp. v. United States*, 55 Fed.Cl. 489 (2003)......................................................... 9-12

*Commissioner v. Tellier*, 383 U.S. 687 (1966) ....................................................................5

*David R. Webb Company, Inc. v. Commissioner*, 708 F.2d 1254 (7th Cir. 1983)..........................8

*Dominion Resources Inc. v. United States*, 219 F.3d 359 (4th Cir. 2000)....................................11

*INDOPCO, Inc. v. Commissioner*, 503 U.S. 79 (1992) ........................................................6,7,12

*Jones v. Commissioner*, 242 F.2d 616 (5th Cir. 1957) ...............................................................11

*Jones v. United States*, 279 F.Supp. 772 (D.Del. 1968) ............................................................11

*Plainfield-Union Water Company v. Commissioner*, 39 T.C. 333 (1962)...........................6,7,9,10

*United Dairy Farmers, Inc. v. United States*, 267 F.3d 510 (6th Cir. 2001) .......................... 10-11

*Welch v. Helvering*, 290 U.S. 111 (1933)......................................................................................5

### STATUTES

42 U.S.C. §§ 9601-9675 ..............................................................................................................3

26 U.S.C. § 162...........................................................................................................................2,5,7

26 U.S.C. § 263..............................................................................................................................5

### REGULATIONS

Treas. Reg. § 1.263(a)-1(b)...........................................................................................................6

### MISCELLANEOUS

Rev. Rul. 94-38, 1994-1 C.B. 35 ...................................................................................................7

P. Val Strehlow, “Contingent Pre-Acquisition Environmental Liabilities: Where’s the Value?” 97 Tax Notes 1067 (November 25, 2002). .......................................................................8

## PRELIMINARY STATEMENT

This motion for partial summary judgment relates to one of the two former refinery sites that are referred to in the complaint.

For many years, Kerr-McGee[1] has spent millions of dollars per year remediating environmental contamination at a rural, former refinery site near Cushing, Oklahoma.[2] Through December 2005, Kerr-McGee has spent approximately $147 million cleaning up the 440-acre site. That amounts to just over $334,000 per acre. Kerr-McGee has incurred those expenses pursuant to a court order entered by an Oklahoma state court.

Not surprisingly, the land's value cannot approach justifying that level of expenditure: Kerr-McGee has essentially given away significant portions of the site, and Tronox Incorporated ("Tronox"), the new owner of the remainder of the site, recently decided to accept an offer of $850 per acre for a substantial portion of the site. Based on the unassailable economic reality that Kerr-McGee (now Tronox) has no hope of recovering anything but a tiny fraction of the $334,000 per acre in expenses, Kerr-McGee's expenses amounted to pouring money down the drain. The expenses, therefore, represented an economic loss that should be deductible.

---

[1] The current parent company, Kerr-McGee Corporation, is the successor to several parent companies that have existed since the refinery site was acquired in 1956. For the sake of simplicity, all such companies will be referred to as "Kerr-McGee."

[2] In November 2005, Tronox Incorporated was separated from Kerr-McGee through an initial public offering. In March 2006, Kerr-McGee distributed its ownership in Tronox Incorporated to its shareholders. The refinery site was, and is currently, owned by Tronox Worldwide LLC, an indirect subsidiary of Tronox Incorporated. Since November 2005, Tronox Incorporated has been responsible for remediating the site.

## QUESTION PRESENTED

Should the plaintiffs be required to capitalize otherwise deductible environmental remediation costs incurred to clean up contamination that existed at the time the plaintiffs acquired a refinery site in 1956 where the legal obligation to remediate the contamination first arose as a result of a law enacted in 1980?

## STATEMENT OF THE CASE

Kerr-McGee Corporation, a Delaware corporation, is the successor-in-interest to the common parent of an affiliated group of corporations that filed consolidated U.S. federal income tax returns for years ended December 31, 1995, and December 31, 1996. (Affidavit of Mark M. Veazey ("Veazey Aff.") ¶ ¶ 2, 3). Plaintiffs filed their complaint on January 3, 2005, seeking a refund of federal income taxes for the 1995 and 1996 taxable years. Plaintiffs' claim for a refund is based, in part, on the improper disallowance by the Internal Revenue Service (the "Service") of a deduction under section 162(a) of the Internal Revenue Code (the "Code")[3] for certain costs of remediating two former refinery sites in Oklahoma. The disallowed deduction related to that portion of the costs attributable to the cleanup of contamination caused by prior owners. This motion for partial summary judgment involves the costs of remediating one of the two former refinery sites – the site in Cushing, Oklahoma (the "Cushing site") – during the two taxable years in issue, 1995 and 1996.

The Cushing site, which Kerr-McGee purchased in 1956, included approximately 440 acres of land and an oil refinery (Veazey Aff. ¶ 4). Prior owners had used the site for refinery operations for more than 40 years and had disposed of refinery wastes on site. (Veazey Aff.

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.

¶ ¶ 4, 5). Kerr-McGee operated the refinery from 1956 until 1972. (Veazey Aff. ¶ 5). Kerr-McGee also processed uranium and thorium at the site during a few years in the 1960's; Kerr-McGee stopped those operations and its licenses were terminated in 1966. (Veazey Aff. ¶ 6). In 1972, Kerr-McGee closed the refinery operations at the site. (Veazey Aff. ¶ 5). Kerr-McGee sold the real and personal property to an unrelated buyer, Dewey Enterprises, which dismantled the refinery and sold the parts. (Veazey Aff. ¶ 7).

In 1980, Congress enacted the Comprehensive Environmental Recovery, Compensation, and Liabilities Act of 1980 (Pub. Law No. 96-510, 94 Stat. 2767 (1980) (codified as amended at 42 U.S.C. §§ 9601-9675 (2000)) ("CERCLA"). In the next year, pursuant to CERCLA, Kerr-McGee informed the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes believed to have been disposed of on the site. (Veazey Aff. ¶ 8). Environmental investigations ensued, and, after several years, the EPA and the Oklahoma State Department of Health determined that under CERCLA the site had to be remediated. (Veazey Aff. ¶ ¶ 9, 11). Kerr-McGee decided to remediate the site rather than litigate and entered into a consent order in the Oklahoma state court with respect to the site. (Veazey Aff. ¶ ¶ 11, 12). The consent order requires Kerr-McGee to perform certain remediation work at the site and stipulates the penalties to be assessed against Kerr-McGee in the event of non-compliance.[4] (Veazey Aff. ¶ 12).

Article VI of the consent order states:

> The objective of this consent order and plans implemented thereunder is to protect the public health and the environment through the prevention or reduction, to the greatest extent possible, of the release or migration of waste material to the groundwater, surface water, air, and soil in and around the Site through the

[4] After notifying the EPA of possible contamination at the site, Kerr-McGee reacquired the land associated with the Cushing site and acquired some contiguous parcels it had never owned. (Veazey Aff. ¶ 10).

> detection of contaminated groundwater, surface waters, and soil, and through implementation of appropriate remedial actions, all under public scrutiny. This objective shall be accomplished pursuant to the provisions set forth in this consent order and Attachment II. The parties hope the delays and costs attendant to federal Superfund actions may thus be avoided while achieving the same level of cleanup.

Through December 31, 2005, Kerr-McGee incurred $147 million in remediation costs at the site. (Veazey Aff. ¶ 15). The remediation costs were incurred in order to comply with the requirements of the consent order. (Lux Aff. ¶ 5). Referring to the map that is attached to Lux Aff. as Exhibit C, with the exception of Parcels Y and AA, the remediation is not complete. (Lux Aff. ¶ ¶ 3, 7). Tronox has assumed the obligation to complete the remediation. (Veazey Aff. ¶ 15).

Most of the site has been idle from 1995 to the present. (Lux Aff. ¶ 6). The exceptions demonstrate that the land has very limited value. Parcels C, D, Y, AA, and L were leased to SemCrude, L.P. ("SemCrude"), for $1 per year. (Lux Aff. ¶ 6(a)) Those parcels were then acquired by SemCrude for $1. (Lux Aff. ¶ 6(a)). In 2002, Parcel B was "leased" to Cox Communications, Inc., for five years for a total of $500. (Lux Aff. ¶ 6(b)). Finally, in July 2006, SemCrude offered to purchase Parcels A, E, and Z from Tronox for $850 per acre. (Lux Aff. ¶ 6(a)). Tronox intends to sell the property to SemCrude at that price. (Lux Aff. ¶ 6(a)).

During the taxable years in issue, 1995 and 1996, Kerr-McGee incurred remediation costs related to the Cushing site of $3,711,305 and $5,400,165, respectively, which Kerr-McGee deducted. (Veazey Aff. ¶ ¶ 13, 14). For 1995, the Service allowed a deduction of $595,563 and disallowed $3,115,742 of the deduction for that year. (Veazey Aff. ¶ 13). For 1996, the Service allowed a deduction of $866,578 and disallowed $4,533,587 of the deduction for that year. (Veazey Aff. ¶ 14). The disallowed costs were those the Service attributed to prior owners' contamination.

The Service's position on audit was that the costs attributable to prior owners' contamination had to be added to Kerr-McGee's basis in the land.

Plaintiffs filed timely claims for refund for both taxable years in issue. Both refund claims were denied.

## ARGUMENT

*A. Introduction.*

This case is another in a long line of cases in which the issue is whether a particular expenditure is deductible under section 162 (or its predecessors) or must be capitalized under section 263 (or its predecessors). On audit, the Service determined that the answer hinges on who put the contamination in the ground – Kerr-McGee or the prior owners. If Kerr-McGee contaminated the ground, the Service allowed a deduction (based on the Service's own revenue ruling); if the prior owners contaminated the ground, the Service required capitalization.

Section 162(a) of Code generally allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To qualify as "ordinary," the expense must relate to a transaction "of common or frequent occurrence in the type of business involved." *Welch v. Helvering*, 290 U.S. 111, 114 (1933). The term "necessary" imposes "only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the (taxpayer's) business.'" *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966) (*quoting Welch*, 290 U.S. at 113).

In contrast, section 263(a)(1) provides that no deduction is allowed for any amounts paid out for new buildings or for permanent improvements or betterments made to increase the value of any property. Such amounts "include amounts paid or incurred (1) to add to the value, or substantially prolong the useful life, of property owned by the taxpayer, such as plant or

equipment, or (2) to adapt property to a new or different use." Treas. Reg. § 1.263(a)-1(b). The increase in value must be material. *Id.*

The purpose of the distinction between deductions and capitalization is "to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes." *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

The courts distinguish between capital and ordinary costs in a pragmatic rather than a literal or mechanical manner. *See A.E. Staley Mfg. Co. v. Comm'r*, 119 F.3d 482, 487 (7th Cir. 1997) ("[D]istinguishing between ordinary and capital costs often requires a rather pragmatic approach.").

This case can be addressed by answering two questions. (1) Had Kerr-McGee owned the Cushing site since before it was contaminated, would the remediation expenditures at issue in this case be deductible? (2) Does the fact that the property was acquired by Kerr-McGee in 1956 change the result?

Kerr-McGee's cleanup costs for prior owners' contamination is deductible since (1) environmental remediation costs are deductible and (2) the obligation to remediate the property did not exist when Kerr-McGee acquired the property in 1956.

*B. The remediation expenditures at issue in this case would clearly be deductible if Kerr-McGee had owned the Cushing site since before it was contaminated.*

In *Plainfield-Union Water Co. v. Commissioner*, 39 T.C. 333 (1962), a leading case in distinguishing between deductions and capital improvements, a water company claimed a deduction for the costs of installing cement lining to correct and prevent tuberculation in its water pipes. The Tax Court, which allowed the deduction, described the test as follows: "[A]ny properly performed repair adds value as compared with the situation existing immediately prior

to that repair. The proper test is whether the expenditure materially enhances the value, use, life expectancy, strength, or capacity as compared with the status of the asset prior to the condition necessitating the expenditure." 39 T.C. at 338. The court concluded, "Comparing the period before tuberculation and after expenditure, we see that the useful life of the Maple Avenue main was not increased by the cleaning and lining and that neither the strength nor the capacity of said main was enhanced." *Id.*

In Rev. Rul. 94-38, 1994-1 C.B. 35, the Service addressed whether a taxpayer's costs of cleaning up its own contamination were deductible. Applying the *Plainfield-Union* test and the matching principle identified in *INDOPCO*, the Service held that the expenditures were deductible. The Service based its holding on the following conclusions: (1) the remediation expenditures "do not produce permanent improvements to [the taxpayer's] land within the scope of section 263(a)(1) or otherwise provide significant future benefits;" (2) the "expenditures do not result in improvements that increase the value of [the taxpayer's] property because [the taxpayer] has merely restored its soil and groundwater to their approximate condition before they were contaminated by [the taxpayer's] manufacturing operations;" (3) "[n]o other aspect of section 263 requires capitalization;" and (4) the expenditures are "within the scope of section 162" because they are "appropriate and helpful in carrying on [the taxpayer's] business and are commonly and frequently required in [the taxpayer's] type of business."

Rev. Rul. 94-38 makes it clear that if Kerr-McGee had owned the Cushing site since before it was contaminated, Kerr-McGee's remediation expenditures would be deductible. That conclusion is supported by the fact that the Service allowed Kerr-McGee a deduction for that part of the remediation costs that was attributable to Kerr-McGee's own contamination of the site during the years 1956 – 1972.

C. *The fact that the Cushing site was acquired by Kerr-McGee does not change the result.*

Since the expenditures at issue would clearly be deductible if Kerr-McGee had owned the Cushing site throughout the period it was used as a refinery, that raises the question whether there is any reason to reach a different result because Kerr-McGee acquired the property in 1956. The case law is clear that an otherwise deductible liability will become a capital expenditure if the liability is assumed as part of the purchase price of a capital asset. In *David R. Webb Company, Inc. v. Commissioner*, 708 F.2d 1254 (7th Cir. 1983), the taxpayer acquired a business that was contractually bound to pay a pension to the widow of a former employee. To purchase the assets of the business, the taxpayer agreed to pay five million dollars and assume certain liabilities, including the obligation to pay the pension. *David R. Webb*, 708 F.2d at 1255. The taxpayer sought to deduct the payments to the widow. The court cited the "well-settled general rule that when an obligation is assumed in connection with the purchase of capital assets, payments satisfying the obligation are non-deductible capital expenditures." 708 F.2d at 1256.

Under *David R. Webb* and many other similar cases, a taxpayer's assumption of a liability as part of the acquisition of property causes an otherwise deductible expenditure to be treated as a capital one. The general rule cannot apply in this case, however, since the obligation to remediate the property *did not exist* in 1956 when Kerr-McGee acquired the Cushing site. Furthermore, the only logical reason to treat the correction of a pre-acquisition defect differently from the correction of defects arising during a taxpayer's ownership of the property is an express or implicit assumption of an obligation as part of the purchase price.[5] Since there was no obligation for Kerr-McGee to assume as part of its purchase price, there is no reason to treat the

[5] *See* P. Val Strehlow, "Contingent Pre-Acquisition Environmental Liabilities: Where's the Value?" 97 Tax Notes 1067, 1079 (November 25, 2002).

cleanup of the prior owners' contamination differently from the cleanup of Kerr-McGee's own contamination. Accordingly, all of the remediation costs at issue should be deductible.

*Cinergy Corp. v. United States*, 55 Fed.Cl. 489 (2003), provides an alternative but similar analysis that also leads to the conclusion that Kerr-McGee's remediation of the prior owners' contamination is deductible. The case involved the deductibility of asbestos remediation expenses for asbestos that was present when the taxpayer constructed a building. The court treated the construction of an asset with a defect as equivalent to the purchase of an asset with a defect. *Cinergy*, 55 Fed.Cl. at 519. The court first examined whether the remediation expenses were deductible under the general principles provided in the case law, including *Plainfield-Union*. *Cinergy*, 55 Fed. Cl. at 515-519. The court concluded that the expenditures were deductible because, among other things, the "improvement only restore[d] value to the property that existed prior to the deterioration." *Id.* at 519.

The court then addressed the Government's contention that because the asbestos was present when the taxpayer constructed the property, its removal must be capitalized. *Id.* Dealing with the issue in a pragmatic manner, the court distinguished between "property defects that were present when the taxpayer acquired the property" and cases "in which contamination occurred over time, causing a health problem that was not anticipated at the time of construction." *Id.* The key time period for the court was the time at which the asbestos became a "full blown problem" and, since that occurred years after the taxpayer constructed the property, the expenditures were deductible. *Id.* A taxpayer's inability to foresee that the defect would become a "full blown problem" was clearly important to the court. *Id.* at 517 ("it thus was not possible to foresee the need for the change at the time the embankments were originally constructed" (citing *Chicago, Burlington & Quincy R.R. v. United States*, 197 Ct.Cl. 264, 455

F.2d 993, 1016 (1972))); *Cinergy*, 55 Fed.Cl. at 519 ("the remediation efforts to address the asbestos problem could [not] have been anticipated by PSI in the original design of the building").

By focusing on when the latent defect became a full blown problem and whether it was foreseeable, the *Cinergy* analysis is akin to asking the second question that was posed above: Did the taxpayer implicitly or explicitly assume the obligation to correct the defect? The answer to that question can only be "no." CERCLA was not enacted until 24 years after Kerr-McGee acquired the Cushing site and therefore any liability created by CERCLA could not have been assumed in 1956. The answer to the questions posed in *Cinergy* – was the defect a full blown problem when the property was acquired or was it foreseeable at the time that it would be? – is also "no." The contamination did not become a full blown problem until years after Kerr-McGee acquired the property, and the health problems associated with it were not anticipated at that time. Under the *Cinergy* analysis, therefore, the remediation expenditures should be fully deductible.

It is possible the Government will contend that under *United Dairy Farmers, Inc. v United States*, 267 F.3d 510 (6th Cir. 2001) ("*UDF*"), the remediation expenditures are not deductible. In that case, the taxpayer acquired convenience store sites that had contamination from underground storage tanks. The taxpayer knew about the contamination when it acquired the property. *UDF*, 267 F.3d at 513. The Sixth Circuit agreed with the Government's argument that the *Plainfield-Union* test does not apply when the contamination that is being cleaned up was present when the taxpayer acquired the property. The court in *UDF* suggests that environmental cleanup costs are deductible only if the taxpayer contaminated the property. *UDF*, 267 F.3d at 519. As the *Cinergy* court made clear, however, such a *per se* rule is

inconsistent with the case law. *Cinergy*, 55 Fed.Cl. at 519. Furthermore, the *UDF* court was motivated in part by the fact that the taxpayer failed to demonstrate that the expenditures did not provide a new use for the property. *UDF*, 267 F.3d at 519. Implicitly, if the taxpayer had produced such evidence, the outcome could have been different. Thus, the court's sweeping statements regarding the deductibility of pre-acquisition contamination should not be applied in all circumstances.

*UDF* and the cases it relies upon, *Jones v. Commissioner*, 242 F.2d 616 (5th Cir. 1957), and *Jones v. United States*, 279 F.Supp. 772 (D.Del. 1968), are readily distinguishable from the instant case because they involved taxpayers who bought property knowing that they were assuming an obligation to correct the problematic conditions and intending to do so.[6] In both *Jones* cases, the taxpayers acquired properties that were in a state of disrepair and rehabilitated them so they could be rented. 242 F.2d at 620 ("the work done 'was more like the reconstruction of a building gutted by fire than ordinary repairs to old apartments'"); 279 F.Supp. at 776 ("prior to the renovation of the mansion 'no one would want (to rent) the house'"). Such cases are best viewed as involving an explicit or implicit assumption of an obligation to rehabilitate the property as part of the purchase price for the property. Furthermore, in neither of the *Jones* cases did the court rely on the presence of the pre-acquisition defects in its analysis and, instead, viewed the taxpayers' improvements as too extensive to be deductible. For all of the reasons set forth above, *UDF* does not govern the treatment of the expenditures at issue in this case.

---

[6] The *United Dairy Farmers* court also relied upon *Dominion Resources Inc. v. United States*, 219 F.3d 359 (4th Cir. 2000). That case did not involve a transfer of the underlying property.

*D. The matching concept requires that Kerr-McGee's expenses be deductible.*

In *INDOPCO*, the Supreme Court identified the matching of expenditures with the income associated with them as the *purpose* for the distinction between deductions and capitalization. Although the matching concept is often fraught with conceptual difficulties, it could not be clearer in this case. In fact, in terms of matching, the case for deducting Kerr-McGee's expenditures is far stronger than was the taxpayer's in *Cinergy*. That taxpayer had a building that it intended to use in the future to earn income that bore a reasonable relationship to the cost of the asbestos remediation. In contrast, Kerr-McGee has rural, undeveloped, radiologically contaminated land that it has spent $147 million (approximately $334,000 per acre) remediating over the course of more than eleven years. Much of the land has either been given away or will be sold for $850 per acre. It is beyond question that there will be no material recovery of Kerr-McGee's $147 million at any point in the future. Thus, when incurred, the expenditures represented a cost that would never be recouped. Accordingly, 1995 and 1996 are the most appropriate times for taking the expenditures into account for tax purposes.

## CONCLUSION

Plaintiffs' motion for partial summary judgment should be granted.

Respectfully submitted,

Dated: November 2, 2006

s/Stephen D. Gardner

STEPHEN D. GARDNER
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, New York 10036-7798
(212) 479-6130

Attorney for Plaintiffs

OF COUNSEL:
Clint E. Massengill