IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-5 T

(Judge Margaret M. Sweeney)

KERR-MCGEE CORPORATION AND SUBSIDIARIES,

Plaintiffs

v.

UNITED STATES,

Defendant

PLAINTIFFS' PROPOSED FINDINGS OF
UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims, Plaintiffs respectfully submit the following Proposed Findings of Uncontroverted Fact.

1. This is an action arising under the internal revenue laws of the United States for the recovery of income taxes and related interest assessed against and collected from Plaintiffs by Defendant. The taxable years involved are Plaintiffs' taxable years ended December 31, 1995, and December 31, 1996. (Answer ¶ 1)

2. Jurisdiction is conferred on this Court by Title 28, United States Code, Section 1491. (Answer ¶ 2)

3. Plaintiff Kerr-McGee Corporation is a corporation organized under the laws of Delaware. (Affidavit of Mark M. Veazey ("Veazey Aff.") ¶ 2)

4. Kerr-McGee Corporation ("Kerr-McGee") is the successor-in-interest to Kerr-McGee Operating Corporation, which was the common parent of an affiliated group of

corporations that filed consolidated federal income tax returns for the years in issue. (Veazey Aff. ¶ 3)

5. In 1956, Kerr-McGee[1] purchased an oil refinery site in Cushing, Oklahoma (the "Cushing site"), from General American Oil Company of Texas. The site contained approximately 440 acres, less certain railroad right-of-ways. The Cushing site had been used as an oil refinery site for more than 40 years by previous owners. (Veazey Aff. ¶ 4)

6. Kerr-McGee operated the refinery at the Cushing site from 1956 until 1972. The refinery was closed in 1972. Like previous owners had done, Kerr-McGee disposed of refinery wastes created by its operations on site. (Veazey Aff. ¶ 5)

7. Pursuant to licenses granted by the U.S. Atomic Energy Commission, Kerr-McGee processed uranium and thorium at the Cushing site during the 1960s. Kerr-McGee stopped those activities and the licenses were terminated in 1966. (Veazey Aff. ¶ 6)

8. After Kerr-McGee stopped refinery operations at the Cushing site, it sold most of the real and personal property used in the refinery operations to an unrelated buyer, Dewey Enterprises, which dismantled the refinery and offered the parts for sale. (Veazey Aff. ¶ 7)

9. In 1981, Kerr-McGee reported to the Environmental Protection Agency (the "EPA") the possible presence of certain wastes believed to have been disposed of at the site. The reports were made pursuant to the Comprehensive Environmental Recovery, Compensation, and Liabilities Act of 1980 (Pub. Law No. 96-510, 94 Stat. 2767 (1980) (codified as amended at 42 U.S.C. §§ 9601-9675 (2000)) ("CERCLA"). (Veazey Aff. ¶ 8)

10. After the reports were made to the EPA, Kerr-McGee, the EPA, and representatives of the Oklahoma State Department of Health ("OSDH") began investigations of

---

[1] References to "Kerr-McGee" include (i) Kerr-McGee Corporation, (ii) its predecessors-in-interest, and (iii) affiliates of Kerr-McGee or its predecessors-in-interest.

the soil, surface water, and groundwater at the site. The investigations lasted several years. (Veazey Aff. ¶ 9)

11. Over the course of several years following the reports to the EPA, Kerr-McGee reacquired the portion of the Cushing site that it had previously sold to Dewey Enterprises. Kerr-McGee also acquired some contiguous parcels that it had not owned before. (Veazey Aff. ¶ 10)

12. After the investigations were substantially complete, the EPA and OSDH took the position that the site had to be cleaned up pursuant to CERCLA. Kerr-McGee chose to remediate the sites rather than litigate its liability. (Veazey Aff. ¶ 11)

13. In 1990, a consent order was entered in the District Court of Payne County, Oklahoma, requiring Kerr-McGee to perform certain remediation work at the Cushing site and stipulating the penalties to be assessed against Kerr-McGee in the event of non-compliance. (Veazey Aff. ¶ 12) Additionally, the United States Nuclear Regulatory Commission required Kerr-McGee to obtain a license to decommission the Cushing site. (Affidavit of Jeff Lux ("Lux Aff.") ¶ 4)

14. The remediation work that occurred at the site was done for the purpose of complying with the consent order and the NRC License. (Lux Aff. ¶ 5).

15. During the year ended December 31, 1995, Kerr-McGee incurred environmental remediation expenditures of $3,711,305 at the Cushing site, which Kerr-McGee deducted on its tax return. The IRS disallowed the deduction of $3,115,742 of those expenditures and required them to be capitalized into Kerr-McGee's basis in the land. (Veazey Aff. ¶ 13)

16. During the year ended December 31, 1996, Kerr-McGee incurred environmental remediation expenditures of $5,400,165 at the Cushing site, which Kerr-McGee deducted on its

tax return. The IRS disallowed the deduction of $4,533,587 of those expenditures and required them to be capitalized into Kerr-McGee's basis in the land. (Veazey Aff. ¶ 14)

17. Since 1996, Kerr-McGee continued to remediate the site until November 28, 2005, at which time Tronox Incorporated assumed responsibility for completing the remediation of the site. Kerr-McGee's remediation expenditures at the site through 2005 totaled $147 million. (Veazey Aff. ¶ 15)

18. On November 28, 2005, Tronox Incorporated ("Tronox") was partially separated from Kerr-McGee through an initial public offering. On March 30, 2006, Kerr-McGee distributed its remaining ownership in Tronox to its shareholders. (Lux Aff. ¶ 1)

19. As a result of the initial public offering and subsequent stock distribution, the Cushing site is now owned by Tronox Worldwide LLC, an indirect subsidiary of Tronox. (Lux Aff. ¶ 3)

20. Portions of the site have been idle (except for remediation activities) during the period from 1995 until the present. Referring to the map attached to the Lux Aff. as Exhibit C, the parcels that have not been idle and a description of the use of the parcel are as follows:

a. Parcels C, D, Y, and AA (including tanks located thereon) and Parcel L were previously leased to SemCrude, L.P. ("SemCrude") (a successor to Notti Gathering Company) for $1 per year pursuant to that certain Lease Agreement dated August 4, 1995 (the "Lease Agreement"). SemCrude subsequently acquired those parcels for $ l pursuant to the terms of the Lease Agreement. Additionally, SemCrude offered to extend the lease with regard to certain parcels and to purchase other parcels from Tronox for $850 per acre, as set forth in the Lease Purchase Modification Letters dated June 9, 2006, and July 21, 2006. Tronox has agreed to accept SemCrude's offers and the sales documentation and lease extension are in process.

b. In 1994, Tronox's predecessor granted Multimedia Cablevision, Inc., an easement to use Parcel B for 5 years. Multimedia Cablevision, Inc., has satellite dishes, radio towers, and a reception station on the property. Through various corporate transactions, the rights of Multimedia Cablevision, Inc., were acquired by Cox Communication, Inc. The parties inadvertently allowed the easement to expire in 1999. The use of the property did not change following the expiration of the easement. In 2002, Tronox granted a five year "tower easement" to Cox Communications, Inc., for a rent of $500. Cox subsequently transferred its interest in the tower easement to Cebridge Acquisition Co. LLC.

c. SemCrude stores soil on Parcel Z; SemCrude is not charged for the use of Parcel Z. (Lux Aff. ¶ 6)

21. Parcels Y and AA as depicted on Exhibit C of Lux Aff. have been released from further remediation pursuant to a No Further Action Letter from the Oklahoma Department of Environmental Quality dated August 24, 2006. Additionally, the NRC license was terminated by the NRC by letter dated May 18, 2006. (Lux Aff. ¶ 7)

Respectfully submitted,

November 2, 2006
DATE

/s/ Stephen D. Gardner

STEPHEN D. GARDNER
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, New York 10036-7798
(212) 479-6130

Attorney for Plaintiffs