Exhibit E

SemCrude

Jayne E. Iffla
*Manager, Right of Way*

Tel: 405.692.5145
Cell: 405.415.5443
Fax: 405.691.5192
E-mail: jiffla@SemGroupLP.com

June 9, 2006

*Via Federal Express*

Donald K. Shandy
Deputy General Counsel
Tronox Worldwide LLC
123 Robert S. Kerr Avenue
Oklahoma City, OK 73012

***RE: Cushing Tank Farm***
***Payne County, Oklahoma***

Dear Mr. Shandy:

SemCrude, L.P., would like to continue with its expansion efforts at the Cushing refinery site beyond the perimeter of tracts 1-5 presently under lease with Tronox that are now being purchased in fee upon approval of the industrial use restriction language imposed by the DEQ.

Previous discussions have clarified that the area SemCrude intends to expand upon for future tank construction is also subject to the terms and conditions of the Consent Order dated May 4, 1990, Cause No. C-90-91-H and a corresponding remedial investigative work plan. Specifically, in a letter dated May 26, 2006, Jeff Lux, has outlined areas I through VI as being the targets of some level of remedial measure that will require approved clean up and release by DEQ prior to any activities.

As a result, at this time, SemCrude, is not interested in purchasing the area of interest in fee; however, is willing to enter into a lease for use of the property until such time as the remedial measures are completed and released by DEQ. Because area No. VI is minimal in size, it has been removed from the area of interest as depicted on Schedule A. Area No. VII, to our understanding, represents the soil storage area for which SemCrude holds an existing easement from Tronox that is not subject to the consent order or DEQ jurisdiction. Therefore, this letter also includes an offer to purchase this tract at this time.

Within this framework of negotiation, attached you will find a draft *Lease Agreement* with accompanying Schedules A and B. Please review and let's discuss any comments moving forward to finalize the lease as soon as possible given the changing climate at Tronox. Secondly, you will find a Payne County, Ok tax assessors plat and Warranty Deed evidencing title of a 6.1 acre site held by Kerr-McGee and described by Jeff Lux as tract area No. VII. SemCrude is offering $850/acre for the purchase of this parcel or $5,185.

Best Regards,

Jayne E. Iffla

Jayne E. Iffla
Manager, Right of Way

JEI/enclosure
Cc: Pete Schwiering
Glenn Collum
Jeff Lux - Tronox




SCHEDULE "A"
CUSHING TANK FARM
PAYNE COUNTY, OKLAHOMA

| | | |
|---|---|---|
| SemCrude | | LEASED PROPERTY<br>TRONOX WORLDWIDE LLC<br>(LESSOR)<br>SEMCRUDE, L.P.<br>(LESSEE) |
| DRAWN BY TS | DATE DRAWN 6/8/05 | DRAWING NO. |
| APPROVED BY JI | SCALE NOT TO SCALE | 1 |

**LEASE AGREEMENT**
Cushing Tank Farm

THIS LEASE AGREEMENT, executed as of June ___, 2006 ("**Lease**"), by and between Tronox Worldwide LLC (formerly named Kerr-McGee Chemical Worldwide LLC) ("**Lessor**"), a Delaware limited liability company, having an address at 123 Robert S. Kerr Avenue, Oklahoma City, Oklahoma 73102, and SemCrude, L.P. ("**Lessee**"), a Delaware limited partnership, having an address of 11501 S I-44 Service Road, Oklahoma City, Oklahoma 73173.

**WITNESSETH:**

WHEREAS, Lessee has requested that Lessor lease to Lessee the Leased Property (as hereinafter defined) for the purpose of developing said real property and that said lease also provide to Lessee an option to investigate the condition of and to purchase all or any portion of the Leased Property; and

WHEREAS, the Leased Property (as hereinafter defined) is contained within property which is subject to that certain Consent Order (as the same may be hereafter amended or supplemented, "Consent Order") dated May 4, 1990, entered into between the State of Oklahoma, acting through the Oklahoma State Department of Health, and Lessor, and approved by the District Court of Payne County, Oklahoma (Cause No. C-90-91-H); and

WHEREAS, in order to maintain compliance with the Consent Order, Lessor shall have certain obligations until the remediation contemplated thereunder has been completed.

NOW, THEREFORE, Lessor and Lessee covenant and agree as follows:

1. Lease of Premises. In consideration of the rents and covenants herein stipulated to be paid and performed by Lessee and upon the terms and conditions herein specified, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Leased Property and assets consisting of (i) the land described in Schedule A ("**Land**"), (ii) the respective easements, rights and appurtenances relating to the Land and the Improvements ("**Appurtenances**"), all of which are hereinafter sometimes collectively referred to as the "**Leased Property**".

2. Use of Leased Property; Quiet Enjoyment. Subject only to the terms and conditions of the Consent Order, Lessee may occupy and use the Leased Property to conduct its operations including but not limited to construction of storage tanks, pipeline(s), and/or any other lawful business activity. With regard to Tracts I through V within the Leased Premises, which said Tracts are currently subject to use restrictions under the Consent Order, Lessee's use of said Tracts I through V shall remain restricted until such time as Lessor provides Lessee with mutually satisfactory evidence of the removal of such restrictions. So long as no Event of Default (as hereinafter defined) has occurred hereunder and is continuing, Lessee shall have the right to the peaceful and quiet occupation and enjoyment of the Leased Property in accordance with the terms of this Lease during the Term (as hereinafter defined), free from disturbance by Lessor or anyone claiming by, through or under Lessor; provided, however, that Lessor and its agents may, upon reasonable notice and subject to any restrictions imposed by law, enter upon

and inspect the Leased Property at reasonable times for any reasonable purpose; and provided further that Lessor and its agents may enter upon and maintain equipment and activities upon the Leased Property in connection with the remediation hereinabove described, and provided that this Lease is subject to the Consent Order and the rights of governmental agencies having jurisdiction over the Leased Property or over Lessor to enter upon the Leased Property and interfere with Lessee's quiet occupation and enjoyment.

3. Term. The Leased Property is leased for an initial term (the "**Term**") commencing on the date hereof and ending on the 10th year anniversary date thereof, subject to extension as provided in Section 10(b).

4. Rent. (a) Lessee shall pay a rental payment of One Dollar ($1.00) contemporaneously with the execution hereof, the receipt of which is acknowledged currently with the execution hereof ("**Basic Rent**").

(b) All amounts which Lessee is required to pay pursuant to this Lease (other than Basic Rent), together with every fine, penalty, interest, and cost which may be added for nonpayment or late payment thereof, shall constitute additional rent ("**Additional Rent**"). If Lessee shall fail to pay any Additional Rent when the same shall become due, then Lessor shall have all rights, powers and remedies with respect thereto as are provided herein or by law in the case of nonpayment of Basic Rent and shall, except as expressly provided herein, have the right to pay the same on behalf of Lessee. Lessee shall pay to Lessor interest at the rate ("**Overdue Rate**") equal to ten percent (10%) (but in no event shall such rate of interest exceed the maximum rate allowed under applicable law) on all overdue Basic Rent and Additional Rent from the due date thereof until paid.

5. Net Lease; Nonterminability. This Lease is a net lease and, any present or future law to the contrary notwithstanding, shall not be terminated by Lessee except as expressly provided herein. Lessee shall pay all costs, taxes, assessments and other expenses of every character, foreseen or unforeseen, for the payment of which Lessor or Lessee is or shall become liable by reason of its estate or interest in the Leased Premises, or which are connected with or arise out of the possession, use, occupancy, maintenance, repair, replacement, rebuilding or mortgaging of the leased Premises or any portion thereof, including without limitation those specifically referred to in this Lease. Lessee ' s obligation to pay Basic Rent, Additional Rent and any other sum payable hereunder shall be absolute and unconditional and shall not be subject to any delay, abatement, reduction (except as described in Section 4 or otherwise expressly provided herein), setoff, counterclaim, recoupment, defense or deduction with respect to any sum payable hereunder, nor (except as otherwise expressly provided herein) shall the obligations of Lessee hereunder be affected, by reason of: (i) any damage to or destruction of the Leased Property or any part thereof; (ii) any taking of the Leased Property or any part thereof by condemnation or otherwise; (iii) any prohibition, limitation, restriction, or prevention of Lessee's use, occupancy or enjoyment of the Leased Property or any part thereof, or any interference with such use, occupancy or enjoyment by any person; (iv) any proceeding relating to Lessor; (v) the impossibility or illegality of performance by Lessor, Lessee or both; (vi) any action of any governmental authority; (vii) Lessee' s acquisition or ownership of all or any part of the Leased Property; or (viii) any other cause, whether similar or dissimilar to the foregoing, any present or

future law to the contrary notwithstanding and whether or not Lessee shall have notice or knowledge of any of the foregoing.

6. Taxes and Assessments; Compliance with Laws. Lessee shall pay, prior to the later of (i) fifteen (15) days after receipt from Lessor of the appropriate tax invoice and (ii) delinquency, all real estate taxes assessed or levied against the Leased Property (which shall mean, if the Leased Property is not a separate tax parcel, such portion as jointly agreed of the taxes payable with respect to the land and improvements contained in the tax parcel of which the Leased Property is a part). Lessee shall also pay as Additional Rent all taxes, fees, or charges imposed upon the conduct of Lessee's business or upon the use, transfer, or possession of all equipment, fixtures, inventory, merchandise or other property of Lessee. Lessee, at its sole cost and expense, but with the cooperation of Lessor if reasonably necessary, will obtain and keep in full force and effect, or cause to be obtained and kept in full force and effect, whatever governmental or regulatory approvals, consents, authorizations and/or licenses, if any, with respect to the ownership, occupation or use of the Leased Property, which may be required of Lessee, Lessor or any other party having any interest in the Leased Property or the occupancy or use thereof. Except for matters as to which Lessor is specifically to be responsible as set forth in Section 16, Lessee, at its sole cost and expense, shall also take such other actions as may be necessary to cause the Leased Premises and its use to comply with all applicable laws, rules, regulations, ordinances, restrictions and insurance policies, now or hereafter in effect, and all agreements to which Lessee is bound and which are now or hereafter in effect.

7. Maintenance and Repair. Lessee, at its sole cost and expense, will maintain all parts of the Leased Property in a state of repair and condition such that no liability shall accrue to Lessor as a result of the condition of the Leased Property and Lessor shall not be required to maintain, repair, service, restore, replace, or rebuild all or any part of the Leased Property, other than as required by compliance with the Consent Order.

8. Condemnation and Casualty. (a) If any part of the Leased Property shall be taken for any public or quasi-public use under any statute or by right of eminent domain or by private purchase in lieu thereof (any such taking or purchase is hereinafter referred to as "**Condemnation**"), then Lessee shall be entitled to receive any condemnation award so received and to control such proceedings. If a Condemnation of part of the Leased Property occurs, then this Lease shall continue on all the same terms and conditions except that the definition of Leased Property will be changed to reflect the effect of the Condemnation. Lessee shall have the right to claim and recover from the condemning authority, but not from the Lessor, any proceeds of any award resulting from a Condemnation.

(b) If the Leased Property is damaged or destroyed by fire, flood or other casualty (any of which occurrences is hereinafter referred to as "**Casualty**"), Lessee shall be entitled to receive the proceeds of any insurance the premiums of which have been paid for by Lessee resulting from the Casualty in question. Lessee, at its sole cost and election, shall either (i), restore the Leased Premises to their condition immediately prior to the Casualty to the extent reasonably possible, or (ii) remove all damaged Improvements and Equipment and restore the Land, if damaged by such removal or the Casualty, to an environmentally clean, safe, and usable condition; provided that such restoration or removal obligation shall not apply if Lessee exercises its purchase option contained in Section 10(a), and provided further, in the absence of

an environmental or safety hazard, such restoration or removal election may be deferred by Lessee until the termination of the Lease.

9. Insurance. (a) At all times during the term of this Lease, Lessee shall purchase and maintain insurance in the types and amounts required by applicable laws and regulations, but shall at a minimum carry the following coverages with companies acceptable to Lessor:

(i) (At Lessee's option) All-Risk Physical Damage Insurance covering all Leased Property with limits determined by Lessee. Lessor shall be named as an additional loss payee under any such insurance, but any proceeds shall be available to cover costs incurred by Lessee under Section 8 (b).

(ii) Worker's Compensation Insurance covering all employees to comply with the laws of the State of Oklahoma and Employer ' s Liability Insurance with a limit of not less than $500,000.

(iii) General Liability Insurance covering all claims for bodily injury, death or property damage occurring on, in or about the Leased Premises and adjoining streets and sidewalks with a combined single limit of not less than $1,000,000 each occurrence. The policy shall include, but not be limited to, Products and Completed Operations, Broad Form Property Damage and Blanket Contractual Liability Coverage. The policy shall also include coverage for the explosion (X), collapse (C) and underground (U) hazards, if applicable.

(iv) Automobile Liability Insurance covering all automotive equipment (whether owned, non-owned or hired) with a combined single limit of not less than $1,000,000 each accident for bodily injury and/or property damage.

(v) Umbrella Liability Insurance to total $10,000,000 when combined separately with each of the limits in (iii) and (iv) above.

(b) The policies specified in (a)(ii) above and any insurance Lessee carries on its equipment shall be endorsed to waive rights of subrogation against Lessor. The policies specified in (a)(iii) through (a)(v) above shall be endorsed to include Lessor as an additional insured. All policies above shall be primary to policies purchased and maintained by Lessor.

(c) Lessee shall furnish Lessor with an insurance certificate as evidence of the above coverages and requirements and containing the following statement:

> "Thirty (30) days prior written notice will be given to SemCrude, L.P. in the event of cancellation or material change in coverage."

(d) The consent of Lessor to the amounts of insurance specified in this Exhibit shall not be considered as a limitation of Lessee's liability under this Lease nor an agreement by Lessor to assume liability in excess of said amounts or for risks not insured against.

10. Purchase. (a) Lessee shall have the option during the Term and Extension Term (as herein defined) to purchase all or any portion of the Leased Property for a purchase price of Eight Hundred and Fifty Dollars ($850.00) per acre, provided that such exercise and purchase do

not violate the requirements of the Consent Order (the foregoing conditions being referred to as the "**Transfer Conditions**"). Lessor shall use its reasonable efforts to cause the Transfer Conditions to be met prior to the end of the Term hereof. At such time during the Term and/or Extension Term as Lessor has determined that the Transfer Conditions have been met, it shall give notice thereof to Lessee (the "**Availability Notice**"). Such option must be exercised by Lessee, if at all, by notice to Lessor given within thirty (30) days after delivery to Lessee by Lessor of the Availability Notice. If Lessee exercises such option, Lessor shall sell to Lessee, and Lessee shall purchase from Lessor, the Leased Property within thirty (30) days after the date Lessee exercises its option to purchase (but not later than the expiration of the Term), on a date designated by Lessee with at least five (5) days' notice to Lessor (but in any event occurring by the end of the Term). To affect such purchase and sale, a Deed conveying the Leased Property to Lessee, in the form attached hereto as Schedule B, will be delivered to the Lessee. Lessee shall pay all charges incident to closing the purchase of the Leased Property. This Lease shall continue for the duration of the Term and Extension Term notwithstanding the purchase of any portion of the Leased Property by Lessee, however, upon the completion of the purchase of the Leased Property by Lessee in its entirety, this Lease shall terminate.

(b) If the Availability Notice has not been given to Lessee by five (5) days prior to the end of the Term, the Term shall be automatically extended for an additional year and from year to year thereafter commencing on the first day after the date this Lease would otherwise expire ("Extension Term"). So long as the Availability Notice shall not have been given, the Term shall continue to be so extended for additional successive periods of one year each in accordance with the preceding sentence. Lessee may terminate this Lease at any time by giving Lessor written advance notice within thirty (30) days of the date of its intention to terminate.

(c) Lessee shall afford Lessor and its agents such access to the Leased Property and records of Lessee as shall be reasonably necessary or appropriate for purposes of compliance by Lessor with the obligations for which it has agreed to be responsible pursuant to Section 16 hereof. Lessee shall not use, or engage in any activities at, the Leased Property in any way inconsistent with, or which causes a violation of, the Consent Order, or any law, rule or regulation compliance with which Lessor is responsible by reason of its covenants contained in Section 16 hereof. The foregoing shall be incorporated in substance into the deed to be delivered to Lessee at the closing of the purchase and sale contemplated in this Section 10 if Lessor has not fully completed all remediation and other requirements of the Consent Order.

11. Subletting and Assignment. Lessee will not sublet the Leased Property or any portion thereof, or assign its interest in this Lease, without the prior written consent of Lessor in each instance (which consent will not be unreasonably withheld). If consented to, each sublease or assignment shall expressly be made subject to the provisions hereof. No such sublease or assignment shall modify any obligation of Lessee hereunder, which obligations shall continue in full force and effect as obligations of Lessee as a principal and not as a guarantor or surety, as though no subletting or assignment had been made.

12. Default Provisions. (a) Any of the following occurrences or acts shall constitute an event of default (an "**Event of Default**") under this Lease: (i) if Lessee shall (A) fail to pay any Additional Rent or other sum required to be paid by Lessee hereunder when due and such

failure shall continue for ten (10) days after written notice of such failure; or (B) fail to observe or perform any other provision hereof or contained in any other agreement, certificate, instrument, or other document executed by Lessee in connection with this Lease for the benefit of either Lessor or any mortgagee, and such failure to observe or perform shall continue for thirty (30) days after written notice to Lessee of such failure (provided, however, that in the case of any such default which cannot be cured by the payment of money and cannot with diligence be cured within such thirty (30) day period, if Lessee shall commence promptly to cure the same and thereafter prosecute the curing thereof with diligence, the time within which such default may be cured shall be extended for such period as is reasonably necessary to complete curing thereof with diligence); (ii) if Lessee shall commence a voluntary case under the federal Bankruptcy Code, shall file a petition in bankruptcy or for reorganization or for an arrangement pursuant to any federal or State bankruptcy law or any similar federal or state law, shall be adjudicated a bankrupt or become insolvent, shall not generally pay its debts as they become due, shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or if a petition or answer proposing the adjudication of Lessee as a bankrupt or its reorganization pursuant to any federal or state bankruptcy law or any similar federal or state law shall be filed in any court and Lessee shall consent to or acquiesce in the filing thereof or such petition or answer shall not be discharged or denied within ninety (90) days after the filing thereof; (iii) if a receiver, trustee or liquidator of Lessee or of all or substantially all of the assets of Lessee or of the Leased Property or Lessee 's estate therein shall be appointed in any proceeding brought by Lessee, as the case may be, or if any such receiver, trustee or liquidator shall be appointed in any proceeding brought against Lessee and shall not be discharged within ninety (90) days after such appointment, or if Lessee shall consent to or acquiesce in such appointment; or (iv) if a custodian for purposes of any federal or state bankruptcy law or any similar federal or state law is appointed or otherwise takes possession of a substantial portion of Lessee' s assets and such custodian is not discharged within ninety (90) days.

(b) If an Event of Default has occurred hereunder and is continuing, Lessor may, in addition to all other rights and elections provided in this Lease and all other legal and equitable remedies available to Lessor, give Lessee notice of Lessor's termination of this Lease. Upon the giving of such notice, this Lease shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date herein fixed for the expiration of the Term of this Lease, and all rights of Lessee hereunder shall expire and terminate, but Lessee shall remain liable as provided in this Lease.

13. Notice. All notices, consents, and other communications given pursuant to this Lease shall be in writing. Any such notice or communication shall become effective when received if sent in the mails, certified or registered with appropriate postage prepaid, or delivered by hand or if sent by telecopy, telex, telegram, cable, or similar device, and shall be directed if to Lessee or Lessor, to the respective addresses set forth below their names on the signature page of this Lease. Lessor and Lessee each may from time to time specify, by giving written notice to the other, (i) any other address in the United States for purposes of this Lease and (ii) any other person or entity that is to receive copies of notices, consents, and other communications hereunder.

In the event that either Lessee or Lessor refuse attempted delivery via (i) certified or registered mail, then notice shall be deemed to have been given upon the date of attempted delivery, provided, however, that such refusal of delivery shall be evidenced by either a United States Postal Service slip or a stamped transmission slip to such effect issued by the entity operating the transmitting facility.

14. Headings. The headings of the various sections and Schedules of this Lease have been inserted for reference only and shall not to any extent have the effect of modifying, amending or changing the expressed terms and provisions of this Lease.

15. Enforceability. (a) Each provision hereof shall be separate and independent and the breach of any such provision by Lessor shall not discharge or relieve Lessee from its obligations to perform. each and every covenant to be performed by Lessee hereunder.

(b) All provisions contained in this Lease shall be binding upon, inure to the benefit of, and be enforceable by, the respective successors and permitted assigns of Lessor and Lessee to the same extent as if each such successor and assign were named as a party hereto.

(c) This Lease may not be changed, modified or discharged except by a writing signed by Lessor and Lessee. Any such change, modification or discharge made otherwise than as expressly permitted by this paragraph shall be void.

16. Incorporation of Certain Terms: No Warranties. Lessor shall comply at its sole expense with all requirements of the Consent Order. LESSOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PREMISES OR ANY MATTERS PERTAINING TO THE SUBJECT MATTER OF THIS LEASE, INCLUDING WITHOUT LIMITATION REPRESENTATIONS CONCERNING HABITABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

17. Indemnification. Lessor agrees to indemnify, defend, and hold harmless Lessee, its subsidiaries, affiliates, successors, and assigns, and its respective directors, officers, employees, shareholders, representatives, and agents (hereinafter collectively referred to as "Indemnitee," from and against and in respect of any and all claims, damages, losses, liabilities and expenses, lawsuits, deficiencies, interest, fines, penalties, attorneys' and consultants' fees, and all amounts paid in defense or settlement of the foregoing, which may be imposed upon or incurred by Indemnitee or asserted against Indemnitee by any other party or parties (including governmental agencies) in connection with any environmental conditions (whether now known or hereafter discovered) or any noncompliance with any federal, state, or local environmental laws, regulations or policies, caused by or resulting from the past, current, or future activities of Lessor, Lessor's predecessors in title, or any person holding an interest in or having a right to possession of any portion of the Leased Premises through the Lessor. Lessor's obligations under this Section 17 shall specifically include the obligation to perform and complete actions and activities required by the Consent Order. Lessor's obligations pursuant to this Section 17 shall exist regardless of whether Indemnitee or some other third party is alleged or held to be strictly or jointly and severally liable with the Lessor.

18. Governing Law. This Lease shall be governed by and interpreted in accordance with the laws of the State of Oklahoma.

IN WITNESS WHEREOF, the Lessor and Lessee have caused this Lease to be executed by their respective signatories thereunto duly authorized.

**LESSOR**
Tronox Worldwide LLC, a Delaware limited liability company

______________________________
Patrick S. Corbett, Vice President

**LESSEE**
SemCrude, L.P., a Delaware limited Partnership
By: SemOperating, G.P., L.L.C.
its general partner

______________________________
Peter L. Schwiering, Vice President Operations

## ACKNOWLEDGMENTS

STATE OF OKLAHOMA §
§
COUNTY OF OKLAHOMA §

On this _____ day of __________2006, before me, the undersigned, a Notary Public in and for the county and state aforesaid, personally appeared ***Patrick S. Corbett*** to me known to be the identical person(s) who signed the foregoing instrument as Vice President of Tronox Worldwide LLC., a Delaware limited liability company, and acknowledged to me that he executed the same as his free and voluntary act and deed and in the capacity therein stated, for the uses and purposes therein set forth. Given under my hand and seal the day and year last above written.

______________________________
Notary Public, State of Oklahoma

My Commission Expires: ______________________

My Commission Number: ______________________

STATE OF OKLAHOMA §
§
COUNTY OF CLEVELAND §

Before me, a Notary Public in and for the State of Oklahoma, on this ____ day of _____________, ***2006***, personally appeared ***Peter L. Schwiering***, known to me to be the identical person who subscribed the name of ***SemCrude, L.P.***, a Delaware limited partnership, by its general partner ***SemOperating, G.P., L.L.C.***, an Oklahoma limited liability company, to the foregoing instrument as its Vice President, Operations and acknowledged to me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of the limited partnership for the uses and purposes set forth.

______________________________
Jayne E. Iffla, Notary Public
State of Oklahoma

My Commission Expires: ***January 13, 2009***

My Commission Number: ***05000570***

**After Recording Return to:**
**SemGas, L.P.**
**11501 South I-44 Service Road**
**Oklahoma City, OK 73173**
**ATTN: Jayne E. Iffla**