IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-5 T

(Judge Margaret M. Sweeney)

KERR-MCGEE CORPORATION AND SUBSIDIARIES,

Plaintiffs

v.

UNITED STATES,

Defendant

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendant submits the following memorandum in opposition to plaintiffs' motion for partial summary judgment. In support of its opposition, the defendant also relies on its Response to Plaintiffs' Proposed Findings of Uncontroverted Fact and the defendant's exhibits attached hereto.

INTRODUCTION

Plaintiffs' motion seeks a partial summary judgment based on question of whether it is entitled to deduct, as a business expense under Section 162 of the Internal Revenue Code, all of the costs it incurred in 1995 and 1996, cleaning up pollution at the plaintiffs' former refinery site

in Cushing, Oklahoma (hereinafter, "Cushing site").[1] Plaintiffs' motion does not address the claim in the complaint related to the costs plaintiff incurred in the same years cleaning up pollution at its former refinery site in Cleveland, Oklahoma (hereinafter, "Cleveland site"). The parties do not dispute that plaintiffs incurred $3,711.305.00 in 1995, and $5,400,165.00, in 1996, cleaning up pollution at the Cushing site.[2] (Veazy Aff. ¶ 13, 14.)

The IRS determined that the amount expended to clean up pollution caused by plaintiffs' operation of the refinery was related to the carrying on of plaintiffs' business, and, therefore, qualified as an ordinary and necessary business expense deductible under § 162. Accordingly, for 1995, the IRS allowed plaintiffs to deduct $595,563.00, of the $3,711,305.00 total cleanup cost incurred in that year. For 1996, the IRS allowed plaintiffs to deduct $866,578.00 of the $5,400,165.00 total cleanup cost incurred in that year. (Veazy Aff. ¶¶ 13, 14.) Plaintiffs seek a refund of the amounts not allowed as a deduction.

The IRS determined that the cleanup cost not allowed as a deduction in each of the years in question was related to the cleaning up of pollution caused by other parties prior to plaintiffs' acquisition of the Cushing site. Since that cost was not directly related to, or required for, the carrying on of plaintiffs' business, the IRS concluded that the cost of cleaning up pollution

---

[1]Citations to the Internal Revenue Code are to the provisions of the Code in effect during 1995 and 1996, the years at issue in this case.

[2]Plaintiffs allege that the total amount of clean up cost incurred through 2005, was $147,000,000.00. (Veazy Aff. ¶ 15.) There is no indication as to how much of that cost was related to the cleaning up of refinery acid wastes and how much was incurred for cleaning up radioactive wastes. Neither is there any indication as to how much of that amount has been allowed as a deduction by the IRS.

caused by third parties, which existed on the site at the time it was acquired by plaintiffs, was a capital expenditure related to the acquisition of the Cushing site and had to be capitalized under § 263.[3] The parties have deferred, until after the Court rules on plaintiffs' motion, conducting discovery on the question of the reasonableness of the IRS' allocation of cleanup costs between the pre-existing pollution and the pollution caused by plaintiffs.

Plaintiffs' current motion is based on its contention that, as a matter of law, all the cost it incurred in 1995 and 1996, to cleanup pollution at the Cushing site, is deductible as a business expense in those years regardless of who created the hazardous condition being cleaned up. Defendant submits that, as a matter of law, the cost of cleaning up the pollution that existed at the Cushing site when it was acquired by the plaintiffs first in 1956, and again in 1984, is a capital expenditure and not a deductible business expense. Since there is nothing in the record which would allow the Court to determine the correct allocation of the total cost incurred between that cost required to cleanup pollution caused by plaintiffs' operation of the refinery and that cost required to cleanup pollution caused by the other parties operation of the refinery, if the Court determines that, as a matter of law, any portion of the cleanup cost in issue is not a deductible business expense, plaintiffs' motion should denied.

---

[3]Capitalizing an expenditure means that the amount is added to plaintiffs' basis in the Cushing site. In the event of a sale of exchange of any portion of the site, which according to Px. F should happen soon, plaintiffs will incur a capital loss to the extent the amount received in the sale is less than plaintiffs' basis in the property. That capital loss can be used to offset any capital gains plaintiffs incurred in the year of sale, and any unused loss can be carried backward or forward to offset capital gains in prior or later years. 26 U.S.C. § 1212(a).

I. FACTUAL BACKGROUND

A. *The Cushing site*.

The Cushing site consists of 440 acres located approximately 2 miles north of Cushing, Oklahoma. (Dx. 2 at 1-2.) In 1915, Consumer Refining Company began operating a petroleum refinery at the Cushing site. (Dx. 2 at 1-2.) Although ownership of the refinery and site changed several times between 1915 and 1956, when plaintiffs acquired it, the refinery remained in operation throughout that period. (Dx. 2 at 1-2.) Prior to 1951, the refinery at the Cushing site used a sulfuric acid/clay treatment process to refine lubricating oil feed stocks. (Dx. Ex. 2 at 1-3.) This process resulted in waste containing clay, acid and asphaltine sludge (hereinafter, "acid waste"). (Dx. Ex. 2 at 1-3.) The acid waste was deposited in five waste pits located on the Cushing site. Beginning in 1951, the sulfuric acid refining process was replaced with a phenol refining process. From that date forward the refinery produced no more acid waste. (Dx. Ex. 2 at 1-3, ES-1.)

Plaintiffs acquired the petroleum refinery and Cushing site in 1956 from General American Oil Company. (Dx. 2 at 1-2; Veazy Affd. § 4.) At the time plaintiffs acquired the site, waste pits 1, 2, 4 and 5 were full and were no longer used for disposal of refinery wastes. (Dx. 2 at 1-3.) Plaintiffs also disposed of refinery waste in pit 3, however, that waste consisted of desalter and wax bottoms, not acid waste. (Dx. 2 at 1-3.) According to a remediation report prepared by Burns and McDonnell Waste Consultants, Inc., on behalf of plaintiffs, the waste pits constituted a hazardous condition because of the corrosive nature of the acid waste generated by

acid/clay refining process used between 1915 and 1951, well before plaintiffs acquired the refinery.[4] (Dx. 2 at 1-2, 1-3, 1-5.)

Between 1963 and 1966, in addition to operating the petroleum refinery, plaintiffs processed uranium and thorium at a facility on the Cushing site. (Veazy Affd. ¶ 6, Dx. 1 at 2.) There was no uranium or thorium processing at the site prior to 1963. Plaintiffs disposed of a small portion of the radioactive waste generated by the uranium facility in pit 4 on the site. Most of the radioactive waste was disposed of in trenches and tank berms on the Cushing site. (Px. B at 3.) The Nuclear Regulatory Commission (hereinafter, "NRC") examined the site and determined that the radioactive waste in pit 4 and in the soil on the site had to be removed and that the former uranium processing building had to be decontaminated. (Px. B at 3.) In 1993, plaintiffs were granted a license by the NRC to remove the radioactive waste at the Cushing site. (Px. B at 1.) The remediation of the radioactive waste occurred in 2000-2005. (Px. Ex. I at 3.) Therefore, none of the clean up cost at issue here was related to the remediation of the radioactive wastes.

In 1972, plaintiffs sold the refinery, and most of the Cushing site, to Dewey Enterprises. (Dx. 2 at 1-2; Veazy Affd. ¶ 8.) Plaintiffs retained ownership of the portion of the Cushing site containing the pipeline office, four above-ground storage tanks, and the southern tank farm with six above-ground tanks.[5] That property has been used continuously for petroleum storage and

---

[4]Plaintiffs also disposed of a small amount of radioactive waste in pit 4 during the operation of their uranium and thorium processing facility in 1963-1966. (Dx. 1 at 3.) However, since the cleanup of the radioactive waste did not commence until 2000, none of the costs at issue here were related to the cleanup of any radioactive waste that existed in pit 4. (Px. I at 3.)

[5]The Southern Tank farm was the facility that plaintiffs leased to SemCrude beginning in 1995, that was also the subject of SemCrude's 2006 purchase offer. (Px. E, F.)

transportation. (Dx. 2 at 1-2.) Dewey Enterprises dismantled the refinery and sold off the related equipment. Dewey Enterprises conducted no refinery operations at the Cushing site. (Dx. 2 at 1-2; Veazy Aff. ¶ 7.) By 1984, plaintiffs had repurchased the property it sold to Dewey Enterprises in 1972. (Dx. 2 at 1-2.)

B. *The obligation to clean up the Cushing site.*

Congress passed the Comprehensive Environmental Recovery, Compensation, and Liabilities Act, 42 U.S.C. §§ 9602-9675 (hereinafter, "CERCLA"), which imposed liability to clean up hazardous waste disposal sites on the parties that discharged the waste, even if those parties no longer owned the site. CERCLA established a fund to clean up the sites were designated by the EPA as national priorities. Such sites are commonly referred to as Super Fund waste sites. In 1981, pursuant to CERCLA, plaintiffs notified the Environmental Protection Agency (hereinafter, "EPA") that hazardous waste potentially remained at the Cushing site. (Dx. 2 at 1-3.) Between 1984 and 1988, EPA conducted several inspections of the site. Those inspections led the EPA to propose to include the Cushing site on the National Priority List, in other words, to designate that site as a Super Fund waste site.[6]

Section 9607 (a) of CERCLA provides that the operator of a facility at the time of a discharge of a hazardous substance is liable for the cost of cleaning up that discharge. However, § 9607(b) provides that a party can assert as a defense against any liability under CERCLA the fact that the discharge was the act of a third party. Therefore, under CERCLA, plaintiffs would

[6]In 1991, after plaintiffs and the state of Oklahoma entered into a consent decree covering remediation of the Cushing site, the EPA rescinded its proposal to include the Cushing site on the NPL, contingent on plaintiffs fully complying with the conditions of the consent order. (Dx. 2 at 1-4.)

not have been liable for the cost of the acid wastes in pits 1-5 on the Cushing site, since that waste was discharged by the third parties who operated the refinery prior to its acquisition by plaintiffs. Plaintiffs, however, decided to remediate the site, rather than litigate with the EPA over the extent of its liability. (Veazy Aff. ¶ 11.) After plaintiffs' notification to the EPA, plaintiffs repurchased the portion of the Cushing site it sold in 1972 in order to remediate that site. (Veazy Aff. ¶ 10; Dx. 2 at 1-2.) Plaintiffs completed acquisition of the Cushing site in 1984. (Dx. 2 at 1-2.)

In 1990, plaintiffs entered into a consent order with the state of Oklahoma covering the remediation of the Cushing site. That consent order covered clean up of both the refinery acid waste and the radioactive waste. In furtherance of the cleaning up of the Cushing site, plaintiffs hired the firm of Burke and McDonnell Waste Consultants, Inc., to prepare a detailed remediation plan, which was completed in 1993. (Dx. 2.) In accordance with the 1993 Remediation Plan, plaintiffs began cleaning up the refinery wastes in pits 1-5. (Dx. 2, ES-1, 2.) Plaintiffs obtained a special license from the NRC allowing it to cleanup the radioactive waste at the site. Remediation of the radioactive wastes occurred between 2000 and June, 2005. (Px. I at 3.)

## II. LEGAL ARGUMENT

### A. *Rules for determining whether expenditure is an expense or capital.*

Section 263 requires taxpayers to capitalize costs incurred for permanent improvements, betterments, restorations, or rehabilitations of property. Treas. Reg. § 1.263(a)-1(b). In contrast, § 162 permits taxpayers to currently deduct the cost of an ordinary and necessary expense that neither materially adds to the value of the property, nor appreciably prolongs its useful life.

Treas. Reg. § 1.162-4. "Section 162(a) of the Code allows deduction of all 'ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.'" *United Dairy Farmers, Inc. v. United States*, 267 F.3d 510, 516 (6th Cir. 2001). Only ordinary and necessary expenditures "directly connected with or pertaining to the taxpayer's trade or business" are deductible under § 162. Treas. Reg. § 1.162-1(a). An expense is a necessary business expense if it is appropriate and helpful in carrying on the taxpayer's business. *Deputy v. duPont*, 308 U.S. 488, 497 (1940). An expense cannot be deducted if it is capital in nature. *United Dairy Farmers.*

"Deductions are exceptions to the norm of capitalization." *Norwest Corporation v. Commissioner*, 108 T.C. 265, 279 (1997). Because the Internal Revenue Code specifically enumerates allowable deductions while providing only a more generalized framework for determining what should be capitalized, "deductions are strictly construed and allowable only as there is a clear provision therefor." *Dominion Resources, Inc. v. United States*, 219 F.3d 359, 371 (4th Cir. 2000). Since an income tax deduction is a matter of legislative grace, the taxpayer has the burden of proving its right to a claimed deduction. *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

The distinction between capital expenditures and ordinary and necessary business expenses evades easy description. *Dominion Resources,* 219 F.3d at 372. "The test which normally is to be applied is that if the expenses are made to 'put' the particular capital asset in efficient operating condition, then they are capital in nature. If, however, they were made merely to 'keep' the asset in efficient operating condition, then they are repairs and are deductible." *Moss v. Commissioner*, 831 F.2d 833, 835 (9th Cir. 1987); see also, *Estate of*

*Walling v. Commissioner,* 373 F.2d 190, 192-193 (3d Cir. 1967); *Norwest,* 108 T.C. 280; *Dominion Resources; United Dairy Farmers*.

The courts have superimposed upon the criteria in the repair regulation, Treas. Reg. 1.162-4, an overriding precept, "that an expenditure made for an item which is part of a general plan or rehabilitation" must be capitalized "even though, standing alone, the item may appropriately be classified as one of repair." *United States v. Wehrli*, 400 F.2d 686, 689 (10th Cir. 1968); see also, *Mountain Fuel Supply Co. v. United States*, 449 F.2d 816, 821-22 (10th Cir. 1971); *Dominion Resources; J. M. Jones v. Commissioner,* 242 F.2d 616, 620 (5th Cir. 1957); *Norwest*. Whether a plan of rehabilitation exists, and whether an item of expense is part of such a plan, are questions of fact.[7] *Werhli*, 400 F.2d at 690.

B. *The standard set forth in United Dairy Farmers*.

This case involves a situation which is not often addressed in the cases that have examined the expense versus capital expenditure issue; the fact that the expenses were incurred to correct a condition that existed prior to acquisition of the property by the taxpayer. Those cases that have examined the question of whether cleanup cost related to a condition that existed prior to the property being acquired by the taxpayer can be deducted, all concluded that the costs are capital expenditures, not deductible business expenses. *United Dairy Farmers*; *J M. Jones*; *Estate of Walling*; *Stoeltzing v. Commissioner*, 266 F.2d 374, 377 (3rd Cir. 1959); *E. Russell Jones v. United States,* 279 F.Supp. 772, 776 (D. Del. 1968),

---

[7]The cleanup cost at issue here was incurred pursuant to a consent order entered into by plaintiffs and the state of Oklahoma. That consent order, Px. A, set forth a detailed plan to restore the Cushing site to its pre-contamination condition. Defendant is not asserting at this time the plan or restoration rationale set forth in *Werhli*, even though the cleanup cost at issue here was incurred pursuant to a general plan of restoration, the consent order.

This case presents a factual situation that has not previously been addressed by any court – property that was purchased for the express purpose of cleaning up pollution and not to carry on any business activity. Plaintiffs sold most of the site in 1972. They repurchased that property in 1984 for the sole purpose of cleaning up pre-existing pollution, not to carry on any business activity. This raises a question of whether any of the cleanup cost could be a business expense. However, the IRS, consistent with Rev. Rul. 94-38, 1994-1 C.B. 35, has allowed plaintiffs a deduction of that portion of the cost related to cleaning up the mess plaintiffs caused in operating the refinery between 1956 and 1972. The remaining cost, related to cleaning up the mess caused by other parties operation of the refinery between 1915 and 1956, is a capital expenditure.

The case closest to the instant case is *United Dairy Farmers*. There, the taxpayer purchased two stores which contained leaking underground fuel storage tanks. The taxpayer removed the leaking tanks and remediated the soil contaminated by the leaking fuel, and sought to deduct the cost as a business expense. The Sixth Circuit concluded that the cost was a capital expenditure because it was not related to the carrying on the taxpayer's business. (267 F.3d at 517.)

> Basically, UDF invites the Court to extend *Plainfield-Union* and Revenue Ruling 94-38 to a situation where a taxpayer, rather than experiencing contamination or impairment of its property in the ordinary course of the taxpayer's business, purchases property in an already contaminated or impaired state. We find, for several reasons, that the district court did not err when declining to extend *Plaintifeld-Union* and Revenue Ruling 94-38 to this case.

The Sixth Circuit in *United Dairy Farmers* set forth a framework to be used in determining whether environmental clean up costs are deductible business expenses or capital expenditures. (267 F.3d at 519.)

> As noted by the government in its brief on appeal, when taken together, *Dominion Resources*, *Plainfield-Union*, and Revenue 94-38 can be harmonized in a coherent framework. That is, three elements must be satisfied for a valid deduction under § 162 for environmental cleanup costs: first, the taxpayer contaminated the property in its ordinary course of business; second, the taxpayer cleaned up the contamination to restore the property to its pre-contamination state; third, the cleanup did not allow the taxpayer to put the property to a new use. In *Dominion Resources*, the taxpayer did not satisfy the third element, because the cleanup allowed the taxpayer to put the property to a new use as a real estate development. In this case, failure to satisfy the first element is sufficient for rejecting UDF's soil remediation claim.

Plaintiffs attempt to distinguish *United Dairy Farmers* by noting that the taxpayer there was aware of the leaking fuel storage tanks at the time it purchased the property. (P. Br. at 11.) However, plaintiffs also knew of the existence of pits 1-5 at the Cushing site, and was aware of the type of waste contained in those pits, at the time it acquired the site. Plaintiffs argue that this case is different from *United Dairy Farmers* because the legal obligation to cleanup the pits did not arise until 1980, with the passage of CERCLA.[8] (P. Br. at 11.) However, there is no indication in *United Dairy Farmers* that the taxpayer there was legally obligated to clean up the land it purchased. It cleaned up the property so it could use in the carrying on of its business. 267 F.3d at 513.

The holding of *United Dairy Farmers* does not refer to whether the taxpayer had any knowledge of its legal obligation to cleanup the pollution on the property at the time it was purchased. As quoted above, the critical factor noted in that case was whether the property was contaminated as a result of the carrying on of the taxpayer's business. If the contamination was not the result of the carrying on the taxpayer's business, then the cleanup expense was not

[8]The taxpayer in *United Dairy Farmers* knew of the existence of the underground tanks at the time of purchase but, like plaintiffs here, was unaware of the cost of remedying that condition When the taxpayer purchased the property the cleanup costs were estimated at $35,000, while the total cost ultimately exceeded $500,000. 267 F.3d at 513, fn. 2.

directly related to the taxpayer's business. Expenses that are not directly related to the carrying on of the taxpayer's business are not deductible § 162 business expenses. *Deputy; United Dairy Farmers*.

Further, the pertinent purchase date in this case is 1984, not the plaintiffs' original purchase of the Cushing site in 1956. Plaintiffs repurchased the Cushing site in 1984 for the sole purpose of cleaning up the pollution there, including the acid waste in pits 1-5 that existed prior to 1956. At the time of that purchase, plaintiffs were fully aware of their legal obligation under CERCLA, since in 1981, plaintiffs notified the EPA, pursuant to CERCLA, of the existence of hazardous materials at the Cushing site, including the waste in pits 1-5. (Veazy Aff. ¶ 8.) Plaintiffs' argument that *United Dairy Farmers* does not apply because plaintiffs were not aware of any legal obligation that the pits had to be cleaned up when they purchased the Cushing site is without merit.

In *Estate of Walling*, the court concluded that expenses incurred to repair barges were deductible only if they related to the operation of the barges by the taxpayer. 373 F.2d at 194. In *J. M. Jones*, the taxpayer acquired a building that was in poor condition. In order to use the building, the taxpayer had to substantially restore it. The court concluded that the cost of remediating the deterioration that existed prior to the taxpayer's acquisition of the property was a capital expenditure because that cost was not related to the carrying on of the taxpayer's business. 242 F.2d at 620.

*Stoeltzing* and *E. Russell Jones* both involved situations where the taxpayer acquired buildings in a dilapidated condition and expended substantial sums to restore those buildings so they could be used in the taxpayers' business. In both cases it was concluded that since the

expenditures were made to "put" the buildings in a usable condition, rather than to "keep" those buildings in that condition, the expenses were capital expenditures, not deductible business expenses. *Stoeltzing*, 266 F.2d at 376; *E. Russell Jones*, 279 F. Supp. at 776.

Those cases reinforce the holding in *United Dairy Farmers*, that to be deductible, the expense must be related to the remediation of contamination that occurred during the ordinary conduct of the taxpayer's business. *United Dairy Farmers*, 267 F.3d at 519. Plaintiffs are not entitled to deduct all the cleanup cost incurred in 1995 and 1996, so its motion for summary judgment must be denied.

C. *The cases relied upon by plaintiffs do not apply to this case*.

The cases relied upon plaintiffs all involve remediation of conditions that arose during the taxpayer's use of the property and which were directly related to carrying on of its business.[9] *Plainfield-Union Water Co. v. Commissioner*, 39 T.C. 333 (1962)(water pipes that deteriorated after many years of use in the taxpayer's business); *Cinergy Corp. v. United States*, 55 Fed.Cl. 489 (2003)(asbestos insulation which became brittle during 20 years of the taxpayer's use of a building). That is not the case here.

---

[9]Plaintiffs also cite to *David R. Webb Company, Inc. v. Commissioner*, 708 F.2d 1254 (7th Cir. 1983). (P. Br. at 8.) That case held that if a purchaser of a business specifically assumes a liability of the prior owner, the payment of that liability is a business expense. Although plaintiffs cite to *Webb*, they also assert that it does not apply to this case because there was no specific assumption of liability here. (P. Br. at 8-9.) There is nothing in the record regarding the terms of purchase of the Cushing site in 1956. Plaintiffs have not alleged that the purchase agreement in 1956 contained a specific assumption of liability regarding cleanup of waste pits 1-5 at the site. In fact, plaintiffs assert the opposite. (P. Br. at 8-9.) In the event the Court determines that the question of whether there was a specific assumption of an obligation to cleanup the site in the 1956 purchase agreement is a material fact, then defendant submits that summary judgment is inappropriate at this time as further discovery is required on that issue.

Plaintiffs also rely on Revenue Ruling 94-38, which involved the cost of cleaning up hazardous waste resulting frm the carrying on of the taxpayer's business. However, Rev. Rul. 94-38 specifically noted that the land was not contaminated when it was acquired by the taxpayer and that the hazardous waste resulted from the taxpayer's manufacturing process. All the authority cited by plaintiffs involve situations where the hazardous condition necessitating the repair arose during the use of property in the conduct of the taxpayer's business. Plaintiffs have not cited any authority to support their contention that cost incurred to cleanup a mess created by another party, which existed at the time the plaintiffs purchased the property in question, and which did not arise during the carrying on of the plaintiffs' business, can be deducted as a business expense.

Plaintiffs argue that this case is governed by *Cinergy*. In *Cinergy*, the court found as a matter of fact that there was no hazardous condition when the property was acquired by the taxpayer, and, therefore, the holding in *United Dairy Farmers* did not apply. (55 Fed.Cl. at 519.)

> By comparison, here, the need for removing and encapsulating the asbestos arose not from contamination the existed at the time the building was constructed in 1972, but because the asbestos became friable over time during the ordinary operation of the office building. As such, the case *sub judice* is not one in which 'a taxpayer improves property defects that were present when the taxpayer acquired the property.' 267 F.3d at 518. [*United Dairy Farmers*]

The critical fact present in this case, that distinguishes it from *Cinergy*, is that the acid wastes in pits 1-5 was hazardous at the time plaintiffs' purchased the site in 1956. The hazardous condition of the property, the corrosive nature of the acid waste, did not deteriorate over time as a result of the use of the property in plaintiffs' business. (Dx. 2 at 1-2, 3, 4.) The hazardous nature of the acid waste in pits 1-5 at the Cushing site was the result of the acid/clay

refining process carried out on the site between 1915 and 1951.[10] (Dx. 2, 1-2.) There is nothing in the record to indicate that the acid waste became more hazardous with the passage of time, the situation present in *Cinergy*. Therefore, the hazardous condition that necessitated the remediation cost which the IRS determined was a capital expenditure, existed at the time plaintiffs acquired the property and did not arise during the conduct of plaintiffs' business at the site. This clearly distinguishes this case from *Cinergy*, and puts it squarely within the rationale set forth in *United Dairy Farmers*.

The reason for the differing result in *Cinergy* and *United Dairy Farmers* is the fact that in the former, the expenses were directly related to the carrying on of the taxpayer's business, while in the later they were not. The prerequisite for the deduction of an expense under § 162 is that it must be directly related to the carrying on of the taxpayer's business. Treas. Reg. § 1.162-1(a). The holdings of *Cinergy*, *Plainfield-Union*, *United Dairy Farmers* and *Jones*, are easily reconciled. If the expense is incurred to remedy a hazardous condition that existed at the time the property was acquired, it is a capital expenditure. If the expense is incurred to remedy a condition that become hazardous through the carrying on of the taxpayer's business, it is a business expense. This case clearly falls in the former situation.

Plaintiffs also cite Rev. Rul. 94-38 to support its position. Rev. Rul. 94-38 stated that the costs of cleaning up hazardous waste arising from the carrying on of the taxpayer's business were deductible under § 162. However, the IRS noted that the expense may qualify as deductible business expense only if "it is appropriate and helpful in carrying on" the taxpayer's

---

[10] Plaintiffs did add some additional waste to one of the pits from its operation of the refinery. However, that waste was not the type of acid waste that the remediation report identified as hazardous and necessitating the cleanup costs. (Dx. 2.)

business. 1994-1 C.B. 35. The cost of cleaning up the pollution at the Cushing site, that was caused by other parties years before plaintiffs operated the refinery, and that was the result of a refinery process which was abandoned five years before plaintiffs' acquired the site, cannot be considered to be "appropriate and helpful in carrying on" plaintiffs' business. Rev. Rul. 94-38 does not help plaintiffs here.[11]

CONCLUSION

For the reasons set forth above, defendant submits that the plaintiffs' motion for

summary

---

[11]Plaintiffs argue that the expenses are deductible in the year incurred because otherwise there would be no matching of expenditures with the income associated with them, citing *INDOPCO, Inc. v. Commissioner*, 503 U.S. 687 (1992). (P. Br. at 12.) However, the matching concept enunciated in *INDOPCO* has no application to the cost at issue here since the cost of cleaning up the pollution caused by other parties operation of the refinery has no relationship to any income, earned at any time, by the plaintiffs. Not all payments by a taxpayer are capital expenditures or business expenses.

Plaintiff's matching argument is based on its contention that the cleanup cost it has incurred between 1995 and the present date will "never be recouped." (P. Br. at 12.) However, that contention is not correct. First, there is nothing in the record to indicate how much of the $147,000,000 cleanup cost incurred through 2005 has already been allowed as a deduction. The IRS allowed a deduction of some of the cost incurred in the years in issue and presumably in all the years thereafter. In addition, beginning on August 5, 1997, taxpayers are allowed to deduct pollution cleanup costs under § 198. In any event, the portion of the cost that was capitalized by plaintiffs will still be recouped over time. That cost is added plaintiffs' basis in the property. When the property was sold, plaintiffs incur a capital loss. § 1211(a). That capital loss offsets any capital gain incurred in the year of the sale, and any capital gain incurred the three prior years and eight subsequent years. § 1212(a). Therefore, plaintiffs, over time, will recover most, if not all, of the cleanup cost it had to capitalize.

judgment should be denied.

Respectfully submitted,

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

February 7, 2007