# EXHIBIT E

Form **1120X** (Rev. December 2001)
Department of the Treasury
Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1995 (Enter month and year.)

Please Type or Print

Name: Kerr-McGee Corporation and Subsidiaries (formerly Kerr-McGee Holdco, Inc.,) successor interest to Kerr-McGee Operating Corporation and Subsidiaries EIN: 73-0311467 (formerly Kerr-McGee Corporation)

Employer identification number: 73-0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.): Kerr-McGee Center (MT-803)

City or town, state, and ZIP code: Oklahoma City, OK 73125

Telephone number (optional): 405-270-1313

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** **Income and Deductions** (see instructions)

| | | (a) As originally reported or as previously adjusted | (b) Net change increase or decrease - explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 1,027,722,196 | | 1,027,722,196 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 936,720,963 | 4,805,007 | 941,525,970 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 91,001,233 | -4,805,007 | 86,196,226 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 22,684,341 | -961,001 | 21,723,340 |

**Payments and Credits** (see instructions)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 4,340,307 | 0 | 4,340,307 |
| b Estimated tax payments | b | 40,860,000 | 0 | 40,860,000 |
| c Refund applied for on Form 4466 | c | 19,000,000 | 0 | 19,000,000 |
| d Subtract line 5c from the sum of lines 5a and 5b | d | 26,200,307 | | 26,200,307 |
| e Tax deposited with Form 7004 | e | | 0 | |
| f Credit from Form 2439 | f | | | |
| g Credit for Federal tax on fuels | g | 46,355 | 0 | 46,355 |

| | | |
|---|---|---|
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | -799,555 |
| 7 Add lines 5d through 6, column (c) | 7 | 25,447,107 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | 2,762,766 |
| 9 Subtract line 8 from line 7 | 9 | 22,684,341 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury."** ▶ | 10 | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 961,001 |
| 12 Enter the amount of line 11 you want: **Credited to 20** estimated tax ▶ Refunded ▶ | 12 | 961,001 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer: Mark M. Veazey [signature] Date: 12.15.03 ▶ Title: Vice President - Taxation

**Paid Preparer's Use Only**

Preparer's signature ▶ Date Check if self-employed ☐ Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ EIN Phone no.

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . ▶ ☐

See Attached

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1995
Part II

Explanation of Changes to Items in Part I

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1995 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $6,059,796 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1995 taxable year and $4,805,007 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1995 taxable year, KMRC incurred environmental remediation expenses of $2,348,491 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,689,265 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

<u>Cushing Site</u>

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1995 taxable year, KMC incurred environmental remediation expenses of $3,711,305 to meet its remediation obligations under the Cushing Consent Order. The deduction of $3,115,742 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1995 – 1996.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in

connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1995, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

# EXHIBIT F

Rec'd 4/11/2003 JRC

Department of the Treasury-Intern. ...evenue Service

Form **870-AD** (rev. 04/1992)

# Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment

| Symbols: | Name of Taxpayer: | SSN or EIN: |
|---|---|---|
| AP:L:DAL:JRC | Kerr McGee Corporation & Subsidiaries | 73-0311467 |

Under the provisions of section 6213(d) of the Internal Revenue Code of 1986 (the Code), or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Code or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies and additions to tax, if any, with interest as provided by law. The undersigned offers also to accept the following overassessments, if any, as correct. Any waiver or acceptance of an overassessment is subject to any terms and conditions stated below and on the second page of this form.

**Deficiencies (Overassessments) and Additions to Tax**

| Year Ended | Kind of Tax | Tax | | | | |
|---|---|---|---|---|---|---|
| 12/31/1995 | Income | ($799,554.00) | | | | |
| 12/31/1996 | Income | ($1,672,113.00) | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

"The taxpayer reserves the right to file a claim for refund or credit, or prosecute a timely-filed claim, for 1995 and 1996 within the time prescribed by Internal Revenue Code Section 6511(a) with respect to adjustments made by the Compliance Division to disallow deductions for environmental clean-up costs incurred at the Cleveland, Oklahoma and Cushing, Oklahoma refinery sites."

(See second page for signature instructions)

| | |
|---|---|
| Signature of Taxpayer: | Date: |
| Signature of Taxpayer: | Date: |
| Signature of Taxpayer's Representative: | Date: |
| Corporate Name: Kerr McGee Corporation & Subsidiaries — Kerr-McGee Corporation | |
| By Corporate Officer: [signature] Title: VP-Taxation | Date: March 14, 2003 |

| For Internal Revenue Use Only | Date Accepted for Commissioner: 4/1/2003 | Signature: James R. Conner [signature] |
|---|---|---|
| | Office: Dallas | Title: Appeals Team Case Leader |

# EXHIBIT G

Form **1120X** (Rev. December 2001)
Department of the Treasury
Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

**For tax year ending** ▶ 12 1995 **(Enter month and year.)**

**Please Type or Print**

Name: Kerr-McGee Corporation and Subsidiaries (formerly Kerr-McGee Holdco, Inc.,) successor interest to Kerr-McGee Operating Corporation and Subsidiaries

**Employer identification number**: 73-0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.) EIN: 73-0311467 (formerly Kerr-McGee Corporation)
Kerr-McGee Center (MT-2404)

City or town, state, and ZIP code: Oklahoma City OK 73125

Telephone number (optional): 405-270-1313

Enter name and address used on original return (If same as above, write "Same.")
Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in Applicable Items and Use Part II To Explain Any Changes

## Part I Income and Deductions (See instructions.)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 1,027,722,196 | 0 | 1,027,722,196 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 936,720,963 | 4,789,368 | 941,510,331 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 91,001,233 | -4,789,368 | 86,211,865 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 22,684,341 | -957,874 | 21,726,467 |

## Payments and Credits (See instructions.)

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 4,340,307 | 0 | 4,340,307 |
| b | Estimated tax payments | b | 40,860,000 | 0 | 40,860,000 |
| c | Refund applied for on Form 4466 | c | 19,000,000 | 0 | 19,000,000 |
| d | Subtract line 5c from the sum of lines 5a and 5b | d | 26,200,307 | 0 | 26,200,307 |
| e | Tax deposited with Form 7004 | e | 0 | 0 | 0 |
| f | Credit from Form 2439 | f | 0 | 0 | 0 |
| g | Credit for Federal tax on fuels | g | 46,355 | 0 | 46,355 |
| | | | | | 0 |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | | | -799,555 |
| 7 | Add lines 5d through 6, column (c) | 7 | | | 25,447,107 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 2,762,766 |
| 9 | Subtract line 8 from line 7 | 9 | | | 22,684,341 |

## Tax Due or Overpayment (see instructions)

| | | | |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury."** ▶ | 10 | 0 |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 957,874 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ 0 **Refunded** ▶ | 12 | 957,874 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer: Mark M. Veazey | Date: June 28, 2004 | ▶ Title: Vice President - Taxation

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Paperwork Reduction Act Notice, see Instructions.** Form **1120X** (Rev. 12-2001)

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . ▶ ☐

See Attached

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1995
Part II

Explanation of Changes to Items in Part I

**Preamble:**

This refund claim is in addition to the refund claim submitted on December 18, 2003, and denied on March 25, 2004. The purpose of this refund claim is to assert an alternative ground upon which the taxpayers' are entitled to a refund. The filing of this refund claim is not in lieu of the previous refund claim and should not be construed as an abandonment or waiver of that claim. The first section below repeats the facts and theories that were included in the previous refund claim. The second section provides an alternative ground and such additional facts as are necessary.

**I. The Previous Refund Claim.**

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1995 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $6,059,796 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1995 taxable year and $4,805,007 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1995 taxable year, KMRC incurred environmental remediation expenses of $2,348,491 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,689,265 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1995 taxable year, KMC incurred environmental remediation expenses of $3,711,305 to meet its remediation obligations under the Cushing Consent Order. The deduction of $3,115,742 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team

Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1995 – 1996.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1995, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

**II. <u>Alternative Ground for Refund Position</u>.**

As an alternative to deducting the entire amount of the remediation expenses that were disallowed by the Revenue Agent, Taxpayer relies on the Commissioner's concessions in *Illinois Tool Works v. Commissioner*, 117 T.C. 39 (2001), *aff'd*, 355 F.3d 997 (7th Cir. 2004), for a deduction of the amounts set forth below. *Illinois Tool* states that payment of a liability assumed with the purchase of assets should be treated as additional purchase price. *Illinois Tool* indicates that the increased purchase price should be allocated to all assets purchased, including assets

subsequently disposed of. In *Illinois Tool*, the Commissioner conceded that the "increased basis" allocable to disposed assets would be deductible in the year of payment rather than capitalized to the remaining assets.

Of the refinery assets purchased by Taxpayer in 1956 at the Cleveland and Cushing sites, only the land remains in 1995-1996. All of the operating assets of the refineries were disposed of in 1972 to unrelated parties. Thus, applying *Illinois Tool* to Taxpayer's facts, the allocation of the additional purchase price (i.e., the remediation expenses) to the refinery assets purchased in 1956 and subsequently disposed of would be as follows:

| | Cleveland | Cushing |
|---|---|---|
| Land (cost in Taxpayer's audited financial records) | $7,175 | $7,560 |
| Total 1956 Purchase Price | ÷1,375,000 | ÷3,500,000 |
| Percentage to Land | 0.52% | 0.22% |
| | | |
| Percentage to Disposed Assets | 99.48% | 99.78% |
| 1995 Cleanup Costs Disallowed by Revenue Agent | x 1,689,265 | x 3,115,742 |
| Portion Deductible in 1995 | $1,680,481 | $3,108,887 |

As an alternative ground for its refund position, Taxpayer asserts that under the application of *Illinois Tool*, $4,789,368 is deductible in 1995.

# EXHIBIT H

Form **1120X** (Rev. December 2001)
Department of the Treasury
Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1996 (Enter month and year.)

Name: Kerr-McGee Corporation and Subsidiaries (formerly Kerr-McGee Holdco, Inc.,) successor interest to Kerr-McGee Operating Corporation and Subsidiaries EIN: 73-0311467 (formerly Kerr-McGee Corporation)

Employer identification number: 73-0311467

Please Type or Print

Number, street, and room or suite no. (If a P.O. box, see instructions.): Kerr-McGee Center (MT-803)

City or town, state, and ZIP code: Oklahoma City, OK 73125

Telephone number (optional): 405-270-1313

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** **Income and Deductions** (see instructions)

| | | (a) As originally reported or as previously adjusted | (b) Net change increase or decrease - explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 1,338,891,996 | | 1,338,891,996 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 1,183,615,570 | 5,712,041 | 1,189,327,611 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 155,276,426 | -5,712,041 | 149,564,385 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 26,146,798 | -1,142,408 | 25,004,390 |

**Payments and Credits** (see instructions)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 2,762,766 | 0 | 2,762,766 |
| b Estimated tax payments | b | 26,300,000 | 0 | 26,300,000 |
| c Refund applied for on Form 4466 | c | | 0 | |
| d Subtract line 5c from the sum of lines 5a and 5b | d | 29,062,766 | | 29,062,766 |
| e Tax deposited with Form 7004 | e | 7,000,000 | 0 | 7,000,000 |
| f Credit from Form 2439 | f | | | |
| g Credit for Federal tax on fuels | g | 15,175 | 0 | 15,175 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | -1,672,113 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 34,405,828 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 8,259,030 |
| 9 Subtract line 8 from line 7 | 9 | | | 26,146,798 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury."** ▶ | 10 | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 1,142,408 |
| 12 Enter the amount of line 11 you want: **Credited to 20 ___ estimated tax** ▶ **Refunded** ▶ | 12 | 1,142,408 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer: [signature] Mark M. Veazey | Date: 12.15.03 | ▶ Title: Vice President - Taxation

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2001)

JSA
2C1820 1.000

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . ▶ ☐

See Attached

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1996
Part II

Explanation of Changes to Items in Part I

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1996 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $7,038,501 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1996 taxable year and $5,712,041 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1996 taxable year, KMRC incurred environmental remediation expenses of $1,638,336 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,178,454 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1996 taxable year, KMC incurred environmental remediation expenses of $5,400,165 to meet its remediation obligations under the Cushing Consent Order. The deduction of $4,533,587 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1995 – 1996.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in

connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1996, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

# EXHIBIT I

Form **1120X** (Rev. December 2001) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 12 1996 (Enter month and year.)

Please Type or Print

Name Kerr-McGee Corporation and Subsidiaries (formerly Kerr-McGee Holdco, Inc.,) successor interest to Kerr-McGee Operating Corporation and Subsidiaries

Employer identification number 73-0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.) EIN: 73-0311467 (formerly Kerr-McGee Corporation)

Kerr-McGee Center (MT-803)

City or town, state, and ZIP code: Oklahoma City OK 73125

Telephone number (optional) 405-270-1313

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in Applicable Items and Use Part II To Explain Any Changes

## Part I Income and Deductions (See instructions.)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 1,338,891,996 | 0 | 1,338,891,996 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 1,183,615,570 | 5,695,939 | 1,189,311,509 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 155,276,426 | -5,695,939 | 149,580,487 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 26,146,798 | -1,139,188 | 25,007,610 |

## Payments and Credits (See instructions.)

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 2,762,766 | 0 | 2,762,766 |
| b | Estimated tax payments | b | 26,300,000 | 0 | 26,300,000 |
| c | Refund applied for on Form 4466 | c | 0 | 0 | 0 |
| d | Subtract line 5c from the sum of lines 5a and 5b | d | 29,062,766 | 0 | 29,062,766 |
| e | Tax deposited with Form 7004 | e | 7,000,000 | 0 | 7,000,000 |
| f | Credit from Form 2439 | f | 0 | 0 | 0 |
| g | Credit for Federal tax on fuels | g | 15,175 | 0 | 15,175 |

| | | | |
|---|---|---|---|
| | | | 0 |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | -1,672,113 |
| 7 | Add lines 5d through 6, column (c) | 7 | 34,405,828 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | 8,259,030 |
| 9 | Subtract line 8 from line 7 | 9 | 26,146,798 |

## Tax Due or Overpayment (see instructions)

| | | | |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury."** ▶ | 10 | 0 |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 1,139,188 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ 0 **Refunded** ▶ | 12 | 1,139,188 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer: [signature] Mark V. Veazey    Date: June 28, 2004    ▶ Title: Vice President - Taxation

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Paperwork Reduction Act Notice, see Instructions.** Form **1120X** (Rev. 12-2001)

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . ▶ ☐

See Attached

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1996
Part II

Explanation of Changes to Items in Part I

**Preamble:**

This refund claim is in addition to the refund claim submitted on December 18, 2003, and denied on March 25, 2004. The purpose of this refund claim is to assert an alternative ground upon which the taxpayers' are entitled to a refund. The filing of this refund claim is not in lieu of the previous refund claim and should not be construed as an abandonment or waiver of that claim. The first section below repeats the facts and theories that were included in the previous refund claim. The second section provides an alternative ground and such additional facts as are necessary.

**I. The Previous Refund Claim.**

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1996 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $7,038,501 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1996 taxable year and $5,712,041 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1996 taxable year, KMRC incurred environmental remediation expenses of $1,638,336 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,178,454 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1996 taxable year, KMC incurred environmental remediation expenses of $5,400,165 to meet its remediation obligations under the Cushing Consent Order. The deduction of $4,533,587 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team

Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1995 – 1996.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1996, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

**II. <u>Alternative Ground for Refund Position</u>.**

As an alternative to deducting the entire amount of the remediation expenses that were disallowed by the Revenue Agent, Taxpayer relies on the Commissioner's concessions in *Illinois Tool Works v. Commissioner*, 117 T.C. 39 (2001), *aff'd,* 355 F.3d 997 (7th Cir. 2004), for a deduction of the amounts set forth below. *Illinois Tool* states that payment of a liability assumed with the purchase of assets should be treated as additional purchase price. *Illinois Tool* indicates that the increased purchase price should be allocated to all assets purchased, including assets

subsequently disposed of. In *Illinois Tool*, the Commissioner conceded that the "increased basis" allocable to disposed assets would be deductible in the year of payment rather than capitalized to the remaining assets.

Of the refinery assets purchased by Taxpayer in 1956 at the Cleveland and Cushing sites, only the land remains in 1995-1996. All of the operating assets of the refineries were disposed of in 1972 to unrelated parties. Thus, applying *Illinois Tool* to Taxpayer's facts, the allocation of the additional purchase price (i.e., the remediation expenses) to the refinery assets purchased in 1956 and subsequently disposed of would be as follows:

| | Cleveland | Cushing |
|---|---|---|
| Land (cost in Taxpayer's audited financial records) | $7,175 | $7,560 |
| Total 1956 Purchase Price | ÷1,375,000 | ÷3,500,000 |
| Percentage to Land | 0.52% | 0.22% |
| | | |
| Percentage to Disposed Assets | 99.48% | 99.78% |
| 1996 Cleanup Costs Disallowed by Revenue Agent | x 1,178,454 | x 4,533,587 |
| Portion Deductible in 1996 | $1,172,326 | $4,523,613 |

As an alternative ground for its refund position, Taxpayer asserts that under the application of *Illinois Tool*, $5,695,939 is deductible in 1996.

# EXHIBIT J

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1997 (Enter month and year.)

| Please Type or Print | |
|---|---|
| Name | Kerr-McGee Operating Corporation (formerly Kerr-McGee Corporation) |
| Employer identification number | 73 : 0311467 |
| Number, street, and room or suite no. (If a P.O. box, see instructions.) | Kerr-McGee Center (MT-2404) |
| City or town, state, and ZIP code | Oklahoma City, OK 73125 |
| Telephone number (optional) | ( 405 ) 270-1313 |

Enter name and address used on original return (If same as above, write "Same.")
Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in applicable items and use Part II on the back to explain any changes

**Part I** Income and Deductions (see instructions)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 791,026,860 | | 791,026,860 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 727,936,655 | 8,201,406 | 736,138,061 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 63,090,205 | (8,201,406) | 54,888,799 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 11,479,766 | (1,640,281) | 9,839,485 |

**Payments and Credits** (see instructions)

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 4,000,000 | | 4,000,000 |
| b | Estimated tax payments | 5b | 21,700,000 | | 21,700,000 |
| c | Refund applied for on Form 4466 | 5c | 8,100,000 | | 8,100,000 |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 17,600,000 | | 17,600,000 |
| e | Tax deposited with Form 7004 | 5e | 0 | | 0 |
| f | Credit from Form 2439 | 5f | 0 | | 0 |
| g | Credit for Federal tax on fuels | 5g | 14,947 | | 14,947 |

Internal Revenue Service
RECEIVED
MAR 29 2007
Wage & Investment
Oklahoma City, OK

| | | | |
|---|---|---|---|
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | 1,845,235 |
| 7 | Add lines 5d through 6, column (c) | 7 | 19,460,182 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | 7,980,416 |
| 9 | Subtract line 8 from line 7 | 9 | 11,479,766 |

**Tax Due or Overpayment** (see instructions)

| | | | |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury". ▶ | 10 | |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 1,640,281 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 1,640,281 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer — March 27, 2007 Date — ▶ Vice President - Taxation Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no. ( )

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

See Attached

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| | 1997 | | | 1998 | | | |
|---|---|---|---|---|---|---|---|
| Calculation Of U.S. Corporation Income Tax | Per Appeals | 1120 X Adjustments | Revised | Per Appeals | Audit Adjustments | Revised | TOTAL DUE OR (OVERPAID) |
| Taxable Income Before NOL but after special deductions | 63,090,205 | (8,201,406) | 54,888,799 | 452,318,889 | (8,996,759) | 443,322,130 | |
| Net Operating Loss Carryback or NOL Deduction | 0 | | | 0 | | 0 | |
| Taxable Income | 63,090,205 | | 54,888,799 | 452,318,889 | | 443,322,130 | |
| Capital Gains | 0 | | | | | | |
| Ordinary Income | 63,090,205 | | 54,888,799 | 452,318,889 | | 443,322,130 | |
| Tax On Ordinary Income | 22,081,572 | (2,870,492) | 19,211,080 | 158,311,611 | (3,148,866) | 155,162,746 | |
| Tax On Capital Gains | 0 | | | 0 | | | |
| Income Tax | 22,081,572 | | 19,211,080 | 158,311,611 | | 155,162,746 | |
| Less Credits : | | | | | | | |
| Foreign Tax Credit | 0 | | 0 | 42,622,943 | 0 | 42,622,943 | |
| Investment Tax Credit | 0 | | | 0 | | | |
| Section 29 Credit | 0 | 0 | 0 | 0 | | 0 | |
| General Business Carryover | 0 | | 0 | 0 | | 0 | |
| Minimum tax credit | 10,601,806 | (1,230,211) | 9,371,595 | 7,836,712 | 2,607,768 | 10,444,480 See calc below | |
| Income Tax After Credits | 11,479,766 | | 9,839,485 | 108,051,956 | | 102,095,322 | |
| Investment Tax Credit Recapture | 0 | | | 0 | | 0 | |
| Alternative Minimum Tax | 0 | | 0 | 0 | | 0 | |
| Total Income Tax | 11,479,766 | | 9,839,485 | 108,051,956 | | 102,095,322 | |
| Total Payments As Of Current Date | 9,834,531 | 1,645,235 | 11,479,766 | 104,629,587 | 3,422,369 | 108,051,956 | |
| Deficiency/(Overpayment) | 1,645,235 | | (1,640,281) | 3,422,369 | | (5,956,634) | (7,596,915) |

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| | | 1997 | | | 1998 | | |
|---|---|---|---|---|---|---|---|
| Calculation Of Alternative Minimum Tax | | Per Appeals | Audit Adjustments | Revised | Per Appeals | Audit Adjustments | Revised |
| Taxable Income Before NOL | | 63,090,205 | (8,201,406) | 54,888,799 | 452,318,889 | (8,996,759) | 443,322,130 |
| Adjustments and Preferences | | 28,853,284 | 0 | 28,853,284 | (28,475,619) | 0 | (28,475,619) |
| Pre-adjustment AMTI - Line 4 & Line 3 of Form 4626 | a. | 91,943,489 | | 83,742,083 | 423,843,270 | | 414,846,511 |
| Adjusted Current Earnings - Line 10 of ACE Worksheet | | 40,042,641 | (8,201,406) | 31,841,235 | 260,153,983 | (8,996,759) | 251,157,224 |
| Pre-adjustment AMTI as corrected loss that per return | | 5,923,453 | 0 | 5,923,453 | 116,069,995 | 0 | 116,069,995 |
| Audit adjustments to Adjusted Current Earnings | | (82,149) | 0 | (82,149) | (398,040) | 0 | (398,040) |
| Adjusted Current Earnings - as per audit | b. | 45,883,945 | | 37,682,539 | 375,825,938 | | 366,829,179 |
| Adjusted Current Earnings Adjustments | (b - a) * .75 = c. | (34,544,658) | | (34,544,658) | (36,012,999) | | (36,012,999) |
| Alternative Minimum Taxable Income before NOL | a + c = d. | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Alternative tax net operating loss deduction | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income | | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Exemption Phase-out Computation : | | | | | | | |
| Enter 40,000 | | 40,000 | | 40,000 | 40,000 | | 40,000 |
| Enter 150,000 | | 150,000 | | 150,000 | 150,000 | | 150,000 |
| Subtotal | | 57,248,831 | | 49,047,425 | 387,680,271 | | 378,683,512 |
| Multiply by 25% | | 14,312,208 | | 12,261,856 | 96,920,068 | | 94,670,878 |
| Exemption | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income After Exemption | | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Multiply by 20% | | 11,479,766 | | 9,839,485 | 77,566,054 | | 75,766,702 |
| Alternative Minimum Tax Foreign Tax Credit | | 0 | | 0 | 27,330,755 | 0 | 27,330,755 |
| Tentative Minimum Tax | | 11,479,766 | | 9,839,485 | 50,235,299 | | 48,435,947 |
| Regular Tax Liability Before All Credits Except FTC | | 22,081,572 | | 19,211,080 | 115,688,668 | | 112,539,803 |
| Alternative Minimum Tax | | 0 | | 0 | 0 | | 0 |

| | |
|---|---|
| 1996 AMT Credit carryforward per IRS comps | 18,238,518 |
| 1995 1120X adj to AMT carryforward | 720,751 |
| 1996 1120X adj to AMT carryforward | 856,806 |
| 1997 credit utilized per above 1120X | (9,371,595) |
| 1998 AMT Credit available for 1120X | 10,444,480 |

| | |
|---|---|
| Proof of refund amounts: | |
| 1995 Environmental adjustments | 4,805,007 |
| 1996 Environmental adjustments | 5,712,041 |
| 1997 Environmental adjustments | 8,201,406 |
| 1998 Environmental adjustments | 8,996,759 |
| Total Cushing/Cleveland adj claimed on 1120X | 27,715,213 |
| @ 35% refund | 9,700,325 |

| | |
|---|---|
| 1995 refund per 1120X | 961,001 |
| 1996 refund per 1120X | 1,142,408 |
| 1997 refund above | 1,640,281 |
| 1998 refund above | 5,956,634 |
| Total refunds requested 1120X | 9,700,324 |

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1997
Part II

Explanation of Changes to Items in Part I

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1997 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $9,927,282 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1997 taxable year and $8,201,406 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1997 taxable year, KMRC incurred environmental remediation expenses of $1,102,728 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $793,193 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

<u>Cushing Site</u>

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1997 taxable year, KMC incurred environmental remediation expenses of $8,824,554 to meet its remediation obligations under the Cushing Consent Order. The deduction of $7,408,213 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1997 – 1998.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in

connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1997, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

# EXHIBIT K

Form 870-AD (rev. 04/1992)

Department of the Treasury-Internal Revenue Service

# Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment

| Symbols: | Name of Taxpayer: | SSN or EIN: |
|---|---|---|
| AP:AO:OKL:KRS | Kerr McGee Operating Corporation (formerly Kerr McGee Corporation) and Subsidiaries | 73-0311467 |

Under the provisions of section 6213(d) of the Internal Revenue Code of 1986 (the Code), or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Code or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies and additions to tax, if any, with interest as provided by law. The undersigned offers also to accept the following overassessments, if any, as correct. Any waiver or acceptance of an overassessment is subject to any terms and conditions stated below and on the second page of this form.

**Deficiencies (Overassessments) and Additions to Tax**

| Year Ended | Kind of Tax | Tax | | | | |
|---|---|---|---|---|---|---|
| 12/31/1995 | Income | ($555,203.00) | | | | |
| 12/31/1996 | Income | ($335,273.00) | | | | |
| 12/31/1997 | Income | $1,845,235.00 | | | | |
| 12/31/1998 | Income | $3,422,369.00 | | | | |
| | | | | | | |
| | | | | | | |

The taxpayer reserves the right to file a claim for refund or credit or prosecute a timely-filed claim, for 1997 and 1998 within the time prescribed by Internal Revenue Code Section 6511(a) with respect to adjustments made by the Compliance Division to disallow deductions for environmental clean-up costs incurred at the Cleveland Oklahoma and Cushing Oklahoma refinery sites.

This agreement also includes consideration of claims for refund filed June 30, 2004 for the years 1988 to 1994 related to the royalty depletion issue, and claims for refund filed June 30, 2004 for the years 1995 and 1996 related to the royalty depletion issue, capitalized 263A costs, and depreciation issue #47 and #48.

This agreement also includes consideration of claims filed for the years 1997 and 1998 related to G&G Amortization, K-M Erie Exploration Worthless CFC, Contingent Recovery and Royalty Depletion.

(See second page for signature instructions)

| Signature of Taxpayer: | Date: |
|---|---|
| Signature of Taxpayer: | Date: |
| Signature of Taxpayer's Representative: | Date: |
| Corporate Name: KERR MCGEE CORPORATION & SUBS | |
| By Corporate Officer: [signature] Title: Vice President - Taxation | Date: 19 May 2006 |

| For Internal Revenue Use Only | Date Accepted for Commissioner: | Signature: |
|---|---|---|
| | Office: Oklahoma City, OK | Title: Team Manager |

# EXHIBIT L

Form **1120X** (Rev. December 2004)
Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1997 (Enter month and year.)

Please Type or Print

Name: Kerr-McGee Operating Corporation (formerly Kerr-McGee Corporation)

Employer identification number: 73 : 0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.): Kerr-McGee Center (MT-2404)

City or town, state, and ZIP code: Oklahoma City, OK 73125

Telephone number (optional): ( 405 ) 270-1313

Enter name and address used on original return (If same as above, write "Same."): Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

**Fill in applicable items and use Part II on the back to explain any changes**

**Part I** Income and Deductions (see instructions)

| | | Line | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 791,026,860 | | 791,026,860 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 727,936,655 | 8,180,983 | 736,117,638 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 63,090,205 | (8,180,983) | 54,909,222 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 11,479,766 | (1,636,196) | 9,843,570 |

**Payments and Credits** (see instructions)

| | | Line | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 4,000,000 | | 4,000,000 |
| b | Estimated tax payments | 5b | 21,700,000 | | 21,700,000 |
| c | Refund applied for on Form 4466 | 5c | 8,100,000 | | 8,100,000 |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 17,600,000 | | 17,600,000 |
| e | Tax deposited with Form 7004 | 5e | 0 | | 0 |
| f | Credit from Form 2439 | 5f | 0 | | 0 |
| g | Credit for Federal tax on fuels | 5g | 14,947 | | 14,947 |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | | | 1,845,235 |
| 7 | Add lines 5d through 6, column (c) | 7 | | | 19,460,182 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 7,980,416 |
| 9 | Subtract line 8 from line 7 | 9 | | | 11,479,766 |

Internal Revenue Service RECEIVED MAR 29 2007 Wage & Investment Oklahoma City, OK

**Tax Due or Overpayment** (see instructions)

| | | Line | Amount |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury". ▶ | 10 | |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 1,636,196 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 1,636,196 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer — Date: March 27, 2007 — ▶ Vice President - Taxation, Title

**Paid Preparer's Use Only**

Preparer's signature ▶ — Date — Check if self-employed ☐ — Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ — EIN — Phone no. ( )

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

See Attached

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of U.S. Corporation Income Tax | 1997 - Alternative Position | | | 1998 Alternative Position | | | | TOTAL DUE OR (OVERPAID) |
|---|---|---|---|---|---|---|---|---|
| | Per Appeals | 1120 X Adjustments | Revised | Per Appeals | Audit Adjustments | Revised | | |
| Taxable Income Before NOL but after special deductions | 63,090,205 | (8,180,983) | 54,909,222 | 452,318,889 | (8,973,578) | 443,345,311 | | |
| Net Operating Loss Carryback or NOL Deduction | 0 | | | 0 | | 0 | | |
| Taxable Income | 63,090,205 | | 54,909,222 | 452,318,889 | | 443,345,311 | | |
| Capital Gains | 0 | | | | | | | |
| Ordinary Income | 63,090,205 | | 54,909,222 | 452,318,889 | | 443,345,311 | | |
| Tax On Ordinary Income | 22,081,572 | (2,863,344) | 19,218,228 | 158,311,611 | (3,140,752) | 155,170,859 | | |
| Tax On Capital Gains | 0 | | | 0 | | | | |
| Income Tax | 22,081,572 | | 19,218,228 | 158,311,611 | | 155,170,859 | | |
| Less Credits : | | | | | | | | |
| Foreign Tax Credit | 0 | | 0 | 42,622,943 | 0 | 42,622,943 | | |
| Investment Tax Credit | 0 | | | 0 | | | | |
| Section 29 Credit | 0 | 0 | 0 | 0 | | 0 | | |
| General Business Carryover | 0 | | 0 | 0 | | 0 | | |
| Minimum tax credit | 10,601,806 | (1,227,148) | 9,374,658 | 7,636,712 | 2,799,944 | 10,436,656 | See calc below | |
| Income Tax After Credits | 11,479,766 | | 9,843,570 | 108,051,956 | | 102,111,260 | | |
| Investment Tax Credit Recapture | 0 | | | 0 | | 0 | | |
| Alternative Minimum Tax | 0 | | 0 | 0 | | 0 | | |
| Total Income Tax | 11,479,766 | | 9,843,570 | 108,051,956 | | 102,111,260 | | |
| Total Payments As Of Current Date | 9,634,531 | 1,845,235 | 11,479,766 | 104,629,587 | 3,422,369 | 108,051,956 | | |
| Deficiency/(Overpayment) | 1,845,235 | | (1,636,196) | 3,422,369 | | (5,940,696) | | (7,576,892) |

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of Alternative Minimum Tax | | 1997 - Alternative Position | | | 1998 Alternative Position | | |
|---|---|---|---|---|---|---|---|
| | | Per Appeals | Audit Adjustments | Revised | Per Appeals | Audit Adjustments | Revised |
| Taxable Income Before NOL | | 63,090,205 | (8,180,983) | 54,909,222 | 452,318,889 | (8,973,578) | 443,345,311 |
| Adjustments and Preferences | | 28,853,284 | 0 | 28,853,284 | (28,475,619) | 0 | (28,475,619) |
| Pre-adjustment AMTI - Line 4 & Line 3 of Form 4626 | a. | 91,943,489 | | 83,762,506 | 423,843,270 | | 414,869,692 |
| Adjusted Current Earnings - Line 10 of ACE Worksheet | | 40,042,641 | (8,180,983) | 31,861,658 | 260,153,983 | (8,973,578) | 251,180,405 |
| Pre-adjustment AMTI as corrected less that per return | | 5,923,453 | 0 | 5,923,453 | 116,069,995 | 0 | 116,069,995 |
| Audit adjustments to Adjusted Current Earnings | | (82,149) | 0 | (82,149) | (398,040) | 0 | (398,040) |
| Adjusted Current Earnings - as per audit | b. | 45,883,945 | | 37,702,962 | 375,825,938 | | 366,852,360 |
| Adjusted Current Earnings Adjustments | (b - a) * .75 = c. | (34,544,658) | | (34,544,658) | (36,012,999) | | (36,012,999) |
| Alternative Minimum Taxable Income before NOL | a + c = d. | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Alternative tax net operating loss deduction | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income | | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Exemption Phase-out Computation : | | | | | | | |
| Enter 40,000 | | 40,000 | | 40,000 | 40,000 | | 40,000 |
| Enter 150,000 | | 150,000 | | 150,000 | 150,000 | | 150,000 |
| Subtotal | | 57,248,831 | | 49,067,848 | 387,680,271 | | 378,706,693 |
| Multiply by 25% | | 14,312,208 | | 12,266,962 | 96,920,068 | | 94,676,673 |
| Exemption | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income After Exemption | | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Multiply by 20% | | 11,479,766 | | 9,843,570 | 77,566,054 | | 75,771,339 |
| Alternative Minimum Tax Foreign Tax Credit | | 0 | | 0 | 27,330,755 | 0 | 27,330,755 |
| Tentative Minimum Tax | | 11,479,766 | | 9,843,570 | 50,235,299 | | 48,440,584 |
| Regular Tax Liability Before All Credits Except FTC | | 22,081,572 | | 19,218,228 | 115,688,668 | | 112,547,916 |
| Alternative Minimum Tax | | 0 | | 0 | 0 | | 0 |

| | |
|---|---|
| 1996 AMT Credit carryforward per IRS comps | 18,238,518 |
| 1995 1120X adj to AMT carryforward | 718,405 |
| 1996 1120X adj to AMT carryforward | 854,391 |
| 1997 credit utilized per above 1120X | (9,374,658) |
| 1998 AMT Credit available for 1120X | 10,436,656 |

Proof of refund amounts:

| | |
|---|---|
| 1995 Environmental adjustments | 4,789,368 |
| 1996 Environmental adjustments | 6,696,939 |
| 1997 Environmental adjustments | 8,180,983 |
| 1998 Environmental adjustments | 8,973,578 |
| Total Cushing/Cleveland adj claimed on 1120X | 27,639,868 |
| @ 35% refund | 9,673,954 |

| | |
|---|---|
| 1995 refund per 1120X | 957,874 |
| 1996 refund per 1120X | 1,139,188 |
| 1997 refund above | 1,636,196 |
| 1998 refund above | 5,940,696 |
| Total refunds requested 1120X | 9,673,954 |

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1997
Alternative Position
Part II

Explanation of Changes to Items in Part I

**Preamble:**

This refund is an alternative position to the refund claim filed on this same date for tax year 1997. The purpose of this refund claim is to assert an alternative ground upon which the taxpayers' are entitled to a refund. The filing of this refund claim is not in lieu of the previous refund claim and should not be construed as an abandonment or waiver of that claim. The first section below repeats the facts and theories that were included in the previous refund claim. The second section provides an alternative ground and such additional facts as are necessary.

**I. The Previous Refund Claim.**

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1997 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $9,927,282 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1997 taxable year and $8,201,406 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1997 taxable year, KMRC incurred environmental remediation expenses of $1,102,728 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of

$793,193 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the

440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1997 taxable year, KMC incurred environmental remediation expenses of $8,824,554 to meet its remediation obligations under the Cushing Consent Order. The deduction of $7,408,213 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1997 – 1998.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1997, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

**II. <u>Alternative Ground for Refund Position</u>.**

As an alternative to deducting the entire amount of the remediation expenses that were disallowed by the Revenue Agent, Taxpayer relies on the Commissioner's concessions in *Illinois Tool Works v. Commissioner*, 117 T.C. 39 (2001), aff'd, 355 F.3d 997 (7th cir. 2004), for a deduction of the amounts set forth below. *Illinois Tool* states that payment of a liability assumed with the purchase of assets should be treated as additional purchase price. *Illinois Tool* indicates that the increased purchase price should be allocated to all assets purchased, including assets subsequently disposed of. In *Illinois Tool*, the Commissioner conceded that the "increased basis" allocable to disposed assets would be deductible in the year of payment rather than capitalized to the remaining assets.

Of the refinery assets purchased by Taxpayer in 1956 at the Cleveland and Cushing sites, only the land remains in 1997-1998. All of the operating assets of the refineries were disposed of in 1972 to unrelated parties. Thus, applying *Illinois Tool* to Taxpayer's facts, the allocation of the additional purchase price (i.e., the remediation expenses) to the refinery assets purchased in 1956 and subsequently disposed of would be as follows:

| | Cleveland | Cushing |
|---|---|---|
| Land (cost in Taxpayer's audited financial records) | $7,175 | $7,560 |
| Total 1956 Purchase Price | ÷ 1,375,000 | ÷ 3,500,000 |
| Percentage to Land | 0.52 % | .22 % |
| Percentage to Disposed Assets | 99.48 % | 99.78 % |
| 1997 Cleanup Costs Disallowed by Revenue Agent | x 793,193 | x 7,408,213 |
| Portion Deductible in 1997 | 789,068 | 7,391,915 |

As an alternative ground for its refund position, Taxpayer asserts that under the application of *Illinois Tool*, $8,180,983 is deductible in 1997.

# EXHIBIT M

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1998 (Enter month and year.)

Please Type or Print

Name: Kerr-McGee Operating Corporation (formerly Kerr-McGee Corporation)

Employer identification number: 73 : 0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.): Kerr-McGee Center (MT-2404)

City or town, state, and ZIP code: Oklahoma City, OK 73125

Telephone number (optional): ( 405 ) 270-1313

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in applicable items and use Part II on the back to explain any changes

**Part I** Income and Deductions (see instructions)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 1,139,648,245 | | 1,139,648,245 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 687,329,356 | 8,996,759 | 696,326,115 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 452,318,889 | (8,996,759) | 443,322,130 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 108,051,956 | (5,956,634) | 102,095,322 |

**Payments and Credits** (see instructions)

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 7,307,549 | | 7,307,549 |
| b | Estimated tax payments | 5b | 115,000,000 | | 115,000,000 |
| c | Refund applied for on Form 4466 | 5c | 55,000,000 | | 55,000,000 |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 67,307,549 | | 67,307,549 |
| e | Tax deposited with Form 7004 | 5e | 0 | | 0 |
| f | Credit from Form 2439 | 5f | 0 | | 0 |
| g | Credit for Federal tax on fuels | 5g | | | 14,522 |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | | | 53,109,027 |
| 7 | Add lines 5d through 6, column (c) | 7 | | | 120,431,098 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 12,379,142 |
| 9 | Subtract line 8 from line 7 | 9 | | | 108,051,956 |

Internal Revenue Service RECEIVED MAR 29 2007 Wage & Investment Oklahoma City, OK

**Tax Due or Overpayment** (see instructions)

| | | | |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury**". ▶ | 10 | |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 5,956,634 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 5,956,634 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer — Date: March 27, 2007 — ▶ Vice President - Taxation, Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no. ( )

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

See Attached

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of U.S. Corporation Income Tax | 1997 Per Appeals | 1997 1120 X Adjustments | 1997 Revised | 1998 Per Appeals | 1998 Audit Adjustments | 1998 Revised | | TOTAL DUE OR (OVERPAID) |
|---|---|---|---|---|---|---|---|---|
| Taxable Income Before NOL but after special deductions | 63,090,205 | (8,201,406) | 54,888,799 | 452,318,889 | (8,996,759) | 443,322,130 | | |
| Net Operating Loss Carryback or NOL Deduction | 0 | | | 0 | | 0 | | |
| Taxable Income | 63,090,205 | | 54,888,799 | 452,318,889 | | 443,322,130 | | |
| Capital Gains | 0 | | | | | | | |
| Ordinary Income | 63,090,205 | | 54,888,799 | 452,318,889 | | 443,322,130 | | |
| Tax On Ordinary Income | 22,081,572 | (2,870,492) | 19,211,080 | 158,311,611 | (3,148,866) | 155,162,746 | | |
| Tax On Capital Gains | 0 | | | 0 | | | | |
| Income Tax | 22,081,572 | | 19,211,080 | 158,311,611 | | 155,162,746 | | |
| Less Credits : | | | | | | | | |
| Foreign Tax Credit | 0 | | 0 | 42,622,943 | 0 | 42,622,943 | | |
| Investment Tax Credit | 0 | | | 0 | | | | |
| Section 29 Credit | 0 | 0 | 0 | 0 | | 0 | | |
| General Business Carryover | 0 | | 0 | 0 | | 0 | | |
| Minimum tax credit | 10,601,806 | (1,230,211) | 9,371,595 | 7,636,712 | 2,807,768 | 10,444,480 | See calc below | |
| Income Tax After Credits | 11,479,766 | | 9,839,485 | 108,051,956 | | 102,095,322 | | |
| Investment Tax Credit Recapture | 0 | | | 0 | | 0 | | |
| Alternative Minimum Tax | 0 | | 0 | 0 | | 0 | | |
| Total Income Tax | 11,479,766 | | 9,839,485 | 108,051,956 | | 102,095,322 | | |
| Total Payments As Of Current Date | 9,634,531 | 1,845,235 | 11,479,766 | 104,629,587 | 3,422,369 | 108,051,956 | | |
| Deficiency/(Overpayment) | 1,845,235 | | (1,640,281) | 3,422,369 | | (5,956,634) | | (7,596,915) |

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of Alternative Minimum Tax | | 1997 Per Appeals | 1997 Audit Adjustments | 1997 Revised | 1998 Per Appeals | 1998 Audit Adjustments | 1998 Revised |
|---|---|---|---|---|---|---|---|
| Taxable Income Before NOL | | 63,090,205 | (8,201,406) | 54,888,799 | 452,318,889 | (8,996,759) | 443,322,130 |
| Adjustments and Preferences | | 28,853,284 | 0 | 28,853,284 | (28,475,619) | 0 | (28,475,619) |
| Pre-adjustment AMTI - Line 4 & Line 3 of Form 4626 | a. | 91,943,489 | | 83,742,083 | 423,843,270 | | 414,846,511 |
| Adjusted Current Earnings - Line 10 of ACE Worksheet | | 40,042,641 | (8,201,406) | 31,841,235 | 260,153,983 | (8,996,759) | 251,157,224 |
| Pre-adjustment AMTI as corrected less that per return | | 5,923,453 | 0 | 5,923,453 | 116,069,995 | 0 | 116,069,995 |
| Audit adjustments to Adjusted Current Earnings | | (82,149) | 0 | (82,149) | (398,040) | 0 | (398,040) |
| Adjusted Current Earnings - as per audit | b. | 45,883,945 | | 37,682,539 | 375,825,938 | | 366,829,179 |
| Adjusted Current Earnings Adjustments | (b - a) * .75 = c. | (34,544,658) | | (34,544,658) | (36,012,999) | | (36,012,999) |
| Alternative Minimum Taxable Income before NOL | a + c = d. | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Alternative tax net operating loss deduction | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income | | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Exemption Phase-out Computation : | | | | | | | |
| Enter 40,000 | | 40,000 | | 40,000 | 40,000 | | 40,000 |
| Enter 150,000 | | 150,000 | | 150,000 | 150,000 | | 150,000 |
| Subtotal | | 57,248,831 | | 49,047,425 | 387,680,271 | | 378,683,512 |
| Multiply by 25% | | 14,312,208 | | 12,261,856 | 96,920,068 | | 94,670,878 |
| Exemption | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income After Exemption | | 57,398,831 | | 49,197,425 | 387,830,271 | | 378,833,512 |
| Multiply by 20% | | 11,479,766 | | 9,839,485 | 77,566,054 | | 75,766,702 |
| Alternative Minimum Tax Foreign Tax Credit | | 0 | | 0 | 27,330,755 | 0 | 27,330,755 |
| Tentative Minimum Tax | | 11,479,766 | | 9,839,485 | 50,235,299 | | 48,435,947 |
| Regular Tax Liability Before All Credits Except FTC | | 22,081,572 | | 19,211,080 | 115,688,668 | | 112,539,803 |
| Alternative Minimum Tax | | 0 | | 0 | 0 | | 0 |

| | |
|---|---|
| 1998 AMT Credit carryforward per IRS comps | 18,238,518 |
| 1995 1120X adj to AMT carryforward | 720,751 |
| 1996 1120X adj to AMT carryforward | 858,806 |
| 1997 credit utilized per above 1120X | (9,371,595) |
| 1998 AMT Credit available for 1120X | 10,444,480 |

Proof of refund amounts:

| | |
|---|---|
| 1995 Environmental adjustments | 4,805,007 |
| 1996 Environmental adjustments | 5,712,041 |
| 1997 Environmental adjustments | 8,201,406 |
| 1998 Environmental adjustments | 8,996,759 |
| Total Cushing/Cleveland adj claimed on 1120X | 27,715,213 |
| @ 35% refund | 9,700,325 |

| | |
|---|---|
| 1995 refund per 1120X | 961,001 |
| 1996 refund per 1120X | 1,142,408 |
| 1997 refund above | 1,640,281 |
| 1998 refund above | 5,956,634 |
| Total refunds requested 1120X | 9,700,324 |

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1998
Part II

Explanation of Changes to Items in Part I

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1998 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $10,941,630 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1998 taxable year and $8,996,759 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1998 taxable year, KMRC incurred environmental remediation expenses of $1,570,211 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,129,453 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1998 taxable year, KMC incurred environmental remediation expenses of $9,371,419 to meet its remediation obligations under the Cushing Consent Order. The deduction of $7,867,306 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1997 – 1998.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in

connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1998, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

# EXHIBIT N

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1998 (Enter month and year.)

Please Type or Print

Name: Kerr-McGee Operating Corporation (formerly Kerr-McGee Corporation)

Employer identification number: 73 : 0311467

Number, street, and room or suite no. (If a P.O. box, see instructions.): Kerr-McGee Center (MT-2404)

Telephone number (optional): ( 405 ) 270-1313

City or town, state, and ZIP code: Oklahoma City, OK 73125

Enter name and address used on original return (If same as above, write "Same."): Same

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in applicable items and use Part II on the back to explain any changes

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change — increase or (decrease) — explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 1,139,648,245 | | 1,139,648,245 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 687,329,356 | 8,973,578 | 696,302,934 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 452,318,889 | (8,973,578) | 443,345,311 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 108,051,956 | (5,940,696) | 102,111,260 |
| **Payments and Credits** (see instructions) | | | | |
| 5a Overpayment in prior year allowed as a credit | 5a | 7,307,549 | | 7,307,549 |
| b Estimated tax payments | 5b | 115,000,000 | | 115,000,000 |
| c Refund applied for on Form 4466 | 5c | 55,000,000 | | 55,000,000 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 67,307,549 | | 67,307,549 |
| e Tax deposited with Form 7004 | 5e | 0 | | 0 |
| f Credit from Form 2439 | 5f | 0 | | 0 |
| g Credit for Federal tax on fuels | 5g | 14,522 | | 14,522 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 53,109,027 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 120,431,098 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 12,379,142 |
| 9 Subtract line 8 from line 7 | 9 | | | 108,051,956 |

Internal Revenue Service RECEIVED MAR 29 2007 Wage & Investment Oklahoma City, OK

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury**". ▶ | 10 | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 5,940,696 |
| 12 Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 5,940,696 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | March 27, 2007 Date | ▶ Vice President - Taxation Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no. ( )

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**See Attached**

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of U.S. Corporation Income Tax | 1997 - Alternative Position Per Appeals | 1997 1120 X Adjustments | 1997 Revised | 1998 Alternative Position Per Appeals | 1998 Audit Adjustments | 1998 Revised | | TOTAL DUE OR (OVERPAID) |
|---|---|---|---|---|---|---|---|---|
| Taxable Income Before NOL but after special deductions | 63,090,205 | (8,180,983) | 54,909,222 | 452,318,889 | (8,973,578) | 443,345,311 | | |
| Net Operating Loss Carryback or NOL Deduction | 0 | | | 0 | | 0 | | |
| Taxable Income | 63,090,205 | | 54,909,222 | 452,318,889 | | 443,345,311 | | |
| Capital Gains | 0 | | | | | | | |
| Ordinary Income | 63,090,205 | | 54,909,222 | 452,318,889 | | 443,345,311 | | |
| Tax On Ordinary Income | 22,081,572 | (2,863,344) | 19,218,228 | 158,311,611 | (3,140,752) | 155,170,859 | | |
| Tax On Capital Gains | 0 | | | 0 | | | | |
| Income Tax | 22,081,572 | | 19,218,228 | 158,311,611 | | 155,170,859 | | |
| Loss Credits : | | | | | | | | |
| Foreign Tax Credit | 0 | | 0 | 42,622,943 | 0 | 42,622,943 | | |
| Investment Tax Credit | 0 | | | 0 | | | | |
| Section 29 Credit | 0 | 0 | 0 | 0 | | 0 | | |
| General Business Carryover | 0 | | 0 | 0 | | 0 | | |
| Minimum tax credit | 10,601,806 | (1,227,148) | 9,374,658 | 7,638,712 | 2,798,944 | 10,436,656 | See calc below | |
| Income Tax After Credits | 11,479,766 | | 9,843,670 | 108,051,956 | | 102,111,260 | | |
| Investment Tax Credit Recapture | 0 | | | 0 | | 0 | | |
| Alternative Minimum Tax | 0 | | 0 | 0 | | 0 | | |
| Total Income Tax | 11,479,766 | | 9,843,570 | 108,051,956 | | 102,111,260 | | |
| Total Payments As Of Current Date | 9,634,531 | 1,845,236 | 11,479,766 | 104,629,587 | 3,422,369 | 108,051,956 | | |
| Deficiency/(Overpayment) | 1,845,235 | | (1,636,196) | 3,422,369 | | (5,940,696) | | (7,576,892) |

KERR-McGEE CORPORATION (CONSOLIDATED)
RECALCULATION OF U.S. CORPORATION INCOME TAX
TAXABLE YEARS ENDED DECEMBER 31, 1997 and 1998

| Calculation Of Alternative Minimum Tax | | 1997 - Alternative Position Per Appeals | 1997 Audit Adjustments | 1997 Revised | 1998 Alternative Position Per Appeals | 1998 Audit Adjustments | 1998 Revised |
|---|---|---|---|---|---|---|---|
| Taxable Income Before NOL | | 63,090,205 | (8,180,983) | 54,909,222 | 452,318,889 | (8,973,578) | 443,345,311 |
| Adjustments and Preferences | | 28,853,284 | 0 | 28,853,284 | (28,475,619) | 0 | (28,475,619) |
| Pre-adjustment AMTI - Line 4 & Line 3 of Form 4626 | a. | 91,943,489 | | 83,762,506 | 423,843,270 | | 414,869,692 |
| Adjusted Current Earnings - Line 10 of ACE Worksheet | | 40,042,641 | (8,180,983) | 31,861,658 | 260,153,983 | (8,973,578) | 251,180,405 |
| Pre-adjustment AMTI as corrected less that per return | | 5,923,453 | 0 | 5,923,453 | 116,069,995 | 0 | 116,069,995 |
| Audit adjustments to Adjusted Current Earnings | | (82,149) | 0 | (82,149) | (398,040) | 0 | (398,040) |
| Adjusted Current Earnings - as per audit | b. | 45,883,945 | | 37,702,962 | 375,825,938 | | 366,852,360 |
| Adjusted Current Earnings Adjustments | (b - a) * .75 = c. | (34,544,658) | | (34,544,658) | (36,012,999) | | (36,012,999) |
| Alternative Minimum Taxable Income before NOL | a + c = d. | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Alternative tax net operating loss deduction | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income | | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Exemption Phase-out Computation : | | | | | | | |
| Enter 40,000 | | 40,000 | | 40,000 | 40,000 | | 40,000 |
| Enter 150,000 | | 150,000 | | 150,000 | 150,000 | | 150,000 |
| Subtotal | | 57,248,831 | | 49,067,848 | 387,680,271 | | 378,706,693 |
| Multiply by 25% | | 14,312,208 | | 12,266,962 | 96,920,068 | | 94,676,673 |
| Exemption | | 0 | | 0 | 0 | | 0 |
| Alternative Minimum Taxable Income After Exemption | | 57,398,831 | | 49,217,848 | 387,830,271 | | 378,856,693 |
| Multiply by 20% | | 11,479,766 | | 9,843,570 | 77,566,054 | | 75,771,339 |
| Alternative Minimum Tax Foreign Tax Credit | | 0 | | 0 | 27,330,755 | 0 | 27,330,755 |
| Tentative Minimum Tax | | 11,479,766 | | 9,843,570 | 50,235,299 | | 48,440,584 |
| Regular Tax Liability Before All Credits Except FTC | | 22,081,572 | | 19,218,228 | 115,688,668 | | 112,547,916 |
| Alternative Minimum Tax | | 0 | | 0 | 0 | | 0 |

| | |
|---|---|
| 1996 AMT Credit carryforward per IRS comps | 18,238,518 |
| 1995 1120X adj to AMT carryforward | 718,405 |
| 1996 1120X adj to AMT carryforward | 854,391 |
| 1997 credit utilized per above 1120X | (9,374,658) |
| 1998 AMT Credit available for 1120X | 10,436,656 |

Proof of refund amounts:

| | |
|---|---|
| 1995 Environmental adjustments | 4,789,358 |
| 1996 Environmental adjustments | 5,895,939 |
| 1997 Environmental adjustments | 8,180,983 |
| 1998 Environmental adjustments | 8,973,578 |
| Total Cushing/Cleveland adj claimed on 1120X | 27,639,868 |
| @ 35% refund | 9,673,954 |

| | |
|---|---|
| 1995 refund per 1120X | 957,874 |
| 1996 refund per 1120X | 1,139,188 |
| 1997 refund above | 1,636,196 |
| 1998 refund above | 5,940,696 |
| Total refunds requested 1120X | 9,673,954 |

Kerr-McGee Corporation
EIN 73-0311467
Form 1120-X
Tax Year 1998
Alternative Position
Part II

Explanation of Changes to Items in Part I

**Preamble:**

This refund is an alternative position to the refund claim filed on this same date for tax year 1998. The purpose of this refund claim is to assert an alternative ground upon which the taxpayers' are entitled to a refund. The filing of this refund claim is not in lieu of the previous refund claim and should not be construed as an abandonment or waiver of that claim. The first section below repeats the facts and theories that were included in the previous refund claim. The second section provides an alternative ground and such additional facts as are necessary.

**I. The Previous Refund Claim.**

1. Line 26 – Other deductions. Environmental Remediation Costs.

Kerr-McGee Corporation ("KMC") was the common parent of an affiliated group that filed a consolidated federal income tax return for the 1998 taxable year (the "Taxpayer"). During that year, Taxpayer incurred expenses of $10,941,630 for environmental remediation of two former refinery sites located near Cleveland and Cushing, Oklahoma. The deductibility of the remediation expenses was an issue during the audit of Taxpayer's return for the 1998 taxable year and $8,996,759 of the expenses were disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cleveland Site

In 1956, KMC (then known as Kerr-McGee Oil Industries, Inc.) purchased the Cleveland site from Johnson Oil and Refinery Company. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

KMC operated a refinery on the site from 1956 until the refinery was closed in 1972. In 1975, the site was transferred to Kerr-McGee Refining Corporation ("KMRC"), a wholly owned subsidiary of KMC.

In 1981, in accordance with the Comprehensive Environmental Recovery, Compensation, and Liabilities Act ("CERCLA"), KMRC notified the United States Environmental Protection Agency (the "EPA") of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. Subsequently, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and the Oklahoma State Department of Health ("OSDH").

In December 1992, a consent order was entered in the District Court of Pawnee County, Oklahoma (the "Cleveland Consent Order"), requiring certain remediation work to be performed by KMRC and stipulating the penalties to be assessed against KMRC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMRC's liability under the Cleveland Consent Order was not limited to remediating the contamination it had caused.

During the 1998 taxable year, KMRC incurred environmental remediation expenses of $1,570,211 to meet its obligations as set forth in the Cleveland Consent Order. The deduction of $1,129,453 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

Cushing Site

KMC purchased the Cushing site from General American Oil Company in 1956. The site had been used for refinery operations since before 1920. When KMC purchased the site, it believed that the site was in compliance with state and federal environmental laws, and it did not anticipate any liability with respect to environmental remediation of the site. Consequently, the price KMC agreed to pay for the site did not reflect any adjustments due to the prospect of such liability.

During the early 1960's, KMC held two licenses issued by the United States Atomic Energy Commission ("AEC") (now the U.S. Nuclear Regulatory Commission). Under those licenses, KMC was authorized to receive uranium and thorium at the Cushing site. Uranium was processed at the site from early 1963 until September 1965, and thorium was processed from early 1965 until February 1966.

In 1966, KMC applied to the AEC for termination of the licenses and proceeded with decontamination activities. Following review of those activities, the AEC formally terminated the two licenses on July 25, 1966.

KMC operated a refinery on the site from its purchase in 1956 until the refinery was closed in 1972. Subsequently, Dewey Enterprises, an unrelated entity, purchased the site and began to dismantle the refinery equipment for salvage.

In 1981, in accordance with CERCLA's requirements, KMRC, on behalf of KMC, notified the EPA of the possible presence of certain wastes it believed had been disposed of on the site in connection with site operations. KMC and KMRC repurchased all but one acre of the 440-acre site. Following the notification of the EPA, a series of investigations lasting several years were conducted at the site by the EPA, KMRC, and OSDH.

In May 1990, a consent order was entered in the District Court of Payne County, Oklahoma (the "Cushing Consent Order"), requiring certain remediation work to be performed by KMC and stipulating the penalties to be assessed against KMC in the event of non-compliance. Some of the contamination at the site was caused by third parties, including previous owners, but KMC's liability under the Cushing Consent Order was not limited to remediating the contamination it had caused.

During the 1998 taxable year, KMC incurred environmental remediation expenses of $9,371,419 to meet its remediation obligations under the Cushing Consent Order. The deduction of $7,867,306 of those expenses was disallowed by the Revenue Agent on various grounds, all of which are without merit.

<u>Environmental Remediation Expenses Were Ordinary and Necessary Business Expenses</u>

The costs at issue were ordinary and necessary expenses incurred in carrying on Taxpayer's trade or business. Therefore, the costs were deductible under section 162 of the Internal Revenue Code. Contrary to the conclusions reached by the Revenue Agent, the costs at issue were not required to be capitalized pursuant to section 263 of the Internal Revenue Code.

Taxpayer hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to Christie Fincher, Team

Coordinator of the Exam Team, or any other members of the Exam Team of the Internal Revenue Service during the audit of Taxpayer's taxable years 1997 – 1998.

2. Line 26 – Other deductions. Abandonment losses.

In the alternative, Taxpayer contends that the environmental remediation costs were abandonment losses. The facts set forth above with respect to the Cleveland and Cushing sites are incorporated by reference.

Neither KMRC nor KMC was compensated by insurance or otherwise for the expenditures incurred to remediate the sites. Furthermore, they had no reasonable prospect of recovering any claim for compensation.

The sites had been permanently withdrawn from use in a trade or business or in the production of income. Neither KMRC nor KMC had any intent to use the sites again or make them available for sale, exchange, or other disposition. The remediation costs were incurred in connection with the dismantlement and decontamination of the sites, each of which had ceased operations years before. Furthermore, the sites were worthless in 1998, since the cost of remediating each site would greatly exceed its fair market value. Consequently, the costs at issue were deductible as abandonment losses under section 165(a) of the Internal Revenue Code.

**II. <u>Alternative Ground for Refund Position</u>.**

As an alternative to deducting the entire amount of the remediation expenses that were disallowed by the Revenue Agent, Taxpayer relies on the Commissioner's concessions in *Illinois Tool Works v. Commissioner*, 117 T.C. 39 (2001), aff'd, 355 F.3d 997 (7th cir. 2004), for a deduction of the amounts set forth below. *Illinois Tool* states that payment of a liability assumed with the purchase of assets should be treated as additional purchase price. *Illinois Tool* indicates that the increased purchase price should be allocated to all assets purchased, including assets

subsequently disposed of. In *Illinois Tool*, the Commissioner conceded that the "increased basis" allocable to disposed assets would be deductible in the year of payment rather than capitalized to the remaining assets.

Of the refinery assets purchased by Taxpayer in 1956 at the Cleveland and Cushing sites, only the land remains in 1997-1998. All of the operating assets of the refineries were disposed of in 1972 to unrelated parties. Thus, applying *Illinois Tool* to Taxpayer's facts, the allocation of the additional purchase price (i.e., the remediation expenses) to the refinery assets purchased in 1956 and subsequently disposed of would be as follows:

| | Cleveland | Cushing |
|---|---|---|
| Land (cost in Taxpayer's audited financial records) | $7,175 | $7,560 |
| Total 1956 Purchase Price | ÷ 1,375,000 | ÷ 3,500,000 |
| Percentage to Land | 0.52 % | .22 % |
| Percentage to Disposed Assets | 99.48 % | 99.78 % |
| 1998 Cleanup Costs Disallowed by Revenue Agent | x 1,129,453 | x 7,867,306 |
| Portion Deductible in 1998 | 1,123,580 | 7,849,998 |

As an alternative ground for its refund position, Taxpayer asserts that under the application of *Illinois Tool*, $8,973,578 is deductible in 1998.